SIEMENS AKTIENGESELLSCHAFT,
Plaintiff,

v.

BELTONE ELECTRONICS
CORPORATION,
Defendant.

No. 73 C 296.

United States District Court,
N. D. Illinois, E. D.

Nov. 13, 1975.

John D. Simpson, Hill, Gross, Simpson, Van Santen, Steadman, Chiara & Simpson, Chicago, Ill., for plaintiff.

Sheldon W. Witcoff and Charles G. Call, Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., for defendant.

MEMORANDUM OPINION

DECKER, District Judge.

This patent infringement action was brought by Siemens Aktiengesellschaft ("Siemens") against Beltone Electronics Corporation ("Beltone"), an Illinois corporation and manufacturer of hearing

aids, and against two other defendants. The action against the other defendants was transferred to the U. S. District Court for the Southern District of New York.[1]

In an opinion entered September 12, 1974, 381 F.Supp. 57, this court found that recovery by Siemens for any past infringement was precluded by laches. However, the court reserved decision as to whether plaintiff should be estopped from asserting its rights with respect to future infringement, granting leave to the parties to submit arguments directed to this issue. Now defendant Beltone moves this court to grant summary judgment estopping plaintiff from enforcing its patent against Beltone.

The patent in question, U. S. Letters Patent No. 3,209,080, describes a hearing aid worn behind the ear, having a frontally-directed microphone or sound opening. Originally this patent was held by Siemens Reiniger Werke, which, on October 1, 1966, transferred its patent rights along with its other assets to plaintiff.

In deciding the laches issue this court established the sequence of events in this dispute, which is equally relevant to the determination of the estoppel issue.

In May, 1961, Siemens Reiniger Werke applied for a German patent pertaining to the subject matter of the patent in suit. A corresponding U. S. patent application was filed in June, 1961. The U. S. patent was issued on September 28, 1965.

During this period Beltone was independently developing a hearing aid with similar features. Beltone was aware of the Siemens patent, but was of the opinion that the Siemens device was not properly patentable in view of the prior art. It proceeded to publicly announce the introduction of its own hearing aid, and in November and December, 1965, made introductory announcements for its product in two major trade journals.

█ It was thus found that Siemens was, or should have been, aware of the alleged infringement as much as seven years prior to bringing suit.[2]

While Siemens sought to justify this delay,[3] this court nonetheless held that its conduct constituted unreasonable and inexcusable dereliction. It also found that Beltone could not be charged with any fault in this matter.

Additionally this court found that Beltone was considerably prejudiced by Siemens' laxity in prosecuting this action. During the period from November 1, 1965, when Beltone's first accused hearing aid was introduced, to July 15, 1971, when Siemens first notified Beltone of the alleged infringement, Beltone allegedly expended in excess of $3,850,000 in research and development, tooling, and sales promotion costs, all attributable to the accused hearing aids. By July 15, 1971, it had also developed a considerable inventory in the hearing aids in question, and had obligated itself to pay for a costly plant-expansion. Since that date Beltone has continued to invest substantial sums in the development and promotion of the controverted hearing aids.[4]

---

1. Defendant Sonotone Corporation subsequently entered into a royalty agreement with Siemens and the suits against Sonotone and its Chicago distributor were dismissed.

2. Given Beltone's extensive advertising and promotion scheme, Siemens cannot contend that it was unaware of Beltone's earphones. This is particularly so where both firms utilized the same journals and advertising media. Indeed the December, 1965, introductory announcement of the Beltone product appeared in *The Hearing Dealer* on the same page with a Siemens advertisement. A party is charged with such knowledge as a reasonable investigation in the circumstances would have dis-

closed. *See Pearson v. Central Ill. Light Co.,* 210 F.2d 352, 356–57 (7th Cir. 1954).

3. Siemens asserts that it made a strategic decision not to enforce its U. S. patent rights until the status of its corresponding German patent was resolved in litigation then pending.

4. Siemens contends that the actual amount of reliance in this case should be calculated on a totally different basis. It asserts that the real measure of prejudice is the amount it would cost Beltone to redesign its hearing aids to incorporate a non-infringing sound opening. It is claimed that this would cost no more than $5,000, including the expense of modifying the existing molds.

These facts were properly found sufficient to establish laches on the part of Siemens. However, the standard for estoppel against prospective relief is not identical to the requirements for a finding of laches.

The distinction between the two was established by the Supreme Court in *Menendez v. Holt*, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888), where it was noted that:

"So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it, but so far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise." 128 U.S. at 524, 9 S.Ct. at 145.

In the Seventh Circuit this principle has been dutifully adopted. "[T]here is indeed an important difference between laches and estoppel." *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1379 (1972). The leading case in this Circuit is probably *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505 (1928), which clearly articulated the existence of different standards and remedies for laches and estoppel:

"There are peculiar and special reasons why the holder of a patent should not be barred from enforcing his right under the patent because of his failure to promptly sue infringers. Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. . . . Then, also, the validity of his patent and the infringement thereof may be, as here, disputed. . . .

"We think, therefore, that there is justification in patent suits for withholding damages for infringements committed prior to the commencement of the suit when laches is established, notwithstanding injunctional relief be granted. But, when it can be shown that the holder of the patent *in addition* to being guilty of laches has, *by his conduct*, estopped himself from asserting his rights under the patent, all relief should be denied and the bill dismissed."

. . . . .

". . . But are they [plaintiffs] barred from injunctional relief or for recovering damages subsequent to the commencement of the suit? If so, it must be because the patent right itself was extinguished. *Menendez v. Holt*, supra. Extinguishment of the patent right must be because appellants are estopped under the evidence to assert their rights." (Emphasis added.) 24 F.2d at 507–08.

■ It is clear, therefore, that a finding of estoppel requires distinct elements from those necessary to prove laches. As the Eighth Circuit has said, "[Even in cases where laches bars recovery of past profits] an injunction applying to future conduct will not usually be denied unless the elements of estoppel exist." *Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (1941).

■ The core problem is the definition of the elements of estoppel. A recent opinion has reviewed many infringement cases, particularly those of this Circuit,

Plaintiff argues that the expenditure of several million dollars by Beltone relates to its entire business rather than the specific features of the contested invention, and thus should not be considered by the court.

This court is not persuaded that the detrimental reliance of Beltone can be so narrowly defined. A substantial amount of the above expenditures relates to promotion and advertising for the controverted hearing aids. A hearing aid with an altered sound-opening might have a market, but it could not be considered to in any way be the same product previously promoted. If Beltone were enjoined from marketing the hearing aid in question, then the good will and recognition built up by these promotions would be rendered valueless. Despite Siemens' rhetoric, a different sound system for a hearing aid is a far more significant alteration than a different carburetor in a car.

and has summarized in general form the requisites of an estoppel defense.

"(1) [I]nfringement; (2) knowledge by the patent owner of the infringement; (3) conduct of the patent owner which misleads the infringer into believing that the patent owner has abandoned his patent or acquiesced in the infringement; and (4) reliance by the infringer on such conduct." *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc.*, 373 F.Supp. 851, 869 (M.D. Pa.1974).

The only difficult part of this standard is the determination of what constitutes "conduct" which misleads the infringer. Defendant Beltone asserts that silence for an extended period constitutes such deceitful conduct, and thus Siemens falls into the category of an estopped patentee.

Indeed, in the majority of estoppel cases referred to this court, the dilatory patentee was found to be barred by both laches and estoppel. The defendants were found to have relied to their detriment on the unjustified delay of the patent holders in pressing their complaints. Such prejudice barred the patent holders from all relief. *See Advanced Hydraulics, Inc. v. Otis Elevator*, 525 F.2d 477, No. 74–1771 (7th Cir. May 2, 1975); *Continental Coatings Corp. v. Metco, Inc., supra ; Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008 (7th Cir. 1970); *Boris v. Hamilton Mfg. Co.*, 253 F.2d 526 (7th Cir. 1958); *Brennan v. Hawley Products Co.*, 182 F.2d 945 (7th Cir. 1950); *Rome Grader & M. Corp. v. J. D. Adams Mfg. Co.*, 135 F.2d 617 (7th Cir. 1943); *Remington Rand, Inc. v. Acme Card System Co.*, 29 F.Supp. 192 (S.D. Ohio 1937).

Nonetheless, the Seventh and Third Circuits have drawn a fine legal line which distinguishes Siemens' silence from the inaction of the plaintiffs in most of the above cases.

In every case, except *Remington, supra*, the patentee had initially notified the alleged infringer long before the filing of the final suit. Thus, the defendant was aware of a possible lawsuit, and

induced by the plaintiff's inaction into assuming that the objection had been abandoned. In the instant suit, however, Siemens, although cognizant of the alleged infringement, never gave any indication at all to Beltone that it was considering legal redress until it actually was on the verge of filing the lawsuit.

This doctrine implies that there is a qualitative difference between the detrimental reliance induced by total silence and that induced by notice of a claim followed by inaction. It would follow that had Siemens written to Beltone in 1966 indicating that it suspected an infringement, Siemens would be presently estopped from asserting its claim.

Although it is somewhat amorphous, this distinction does indeed exist. The phraseology of the leading decisions implies that something more is required of the conduct necessary to prove estoppel:

"But, when it can be shown that the holder of the patent *in addition* to being guilty of laches, has *by his conduct*, estopped himself from asserting his rights under the patent, all relief should be denied and the bill dismissed." *George J. Meyer Mfg. Co. v. Miller Mfg. Co., supra*, at 507. (Emphasis added.)

"[Estoppel applies] if the evidence of unreasonable and unexcused delay *also* disclosed that the patentee's *conduct* had encouraged the belief that the infringer's business would be unmolested." *Continental Coatings Corp. v. Metco, Inc., supra*, at 1380. (Emphasis added.)

"[Estoppel cases] proceed on the theory that the plaintiff knows his rights and has had ample opportunity to establish them in the proper forum; that, because of delay, the defendant has good reason to think that the plaintiff believes his *asserted* rights to be worthless or that he has abandoned them." *Westco-Chippewa Pump Co. v. Delaware Electric & S. Co.*, 64 F.2d 185 (3rd Cir. 1933). (Emphasis added.)

 To find this distinction puts a heavy burden upon a few significant

words, *i. e.*, that there must be additional conduct beyond the silence proving laches, or that the rights must have been already asserted, etc. But on the other hand, without this distinction, the discrete identities of laches and estoppel, mandated by *Menendez v. Holt, supra,* would be blurred. Thus, the court in *Minnesota Mining & Mfg. Co. v. Berwick Industries, Inc., supra,* reluctantly felt compelled to require prior notification as a prerequisite for an estoppel defense. 373 F.Supp. at 869.

While the wording may be tenuous, there is indeed justification for a stricter standard on an estoppel defense. Of course, a patentee should not be able to sleep upon his rights, and then take action, when the patent has proven itself valuable, to confiscate the profits of an innocent party who has labored in the same field at great expense. Thus, laches should bar retrospective relief. But an estoppel would render the entire patent valueless against the infringer. It is indeed a harsh remedy, and should require a showing of more substantial reliance, some proof of greater deception.

Perhaps the mechanical formula of categorizing cases on the basis of prior notice is not the best method for separating the two classes of dilatory infringement actions. But we are bound by the apparent meaning of the opinions of the courts above, and cannot bar the action in this case by means of an estoppel.

Nonetheless, this court is not compelled by any authority totally to disregard the prejudicial effect of delay in an action merely because it does not amount to an estoppel. As the reluctant court in *Berwick* declared, "The Court retains its power to do equity under all the circumstances." 373 F.Supp. at 870. Where the patent holder is not an innocent party, a court may fashion relief accordingly. The balancing of equities may not justify the granting of injunctive relief, and may limit the patentee to the recovery of a fair royalty for use of the product. *Accord, Royal-McBee Corporation v. Smith-Corona Marchant, Inc.,*

295 F.2d 1 (2d Cir. 1961). Indeed, *Menendez v. Holt, supra,* expressly permits such flexible relief:

> "[A] court might hesitate as to the measure of relief where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand." 128 U.S. at 524, 9 S.Ct. at 145.

In short, although this court cannot dismiss an infringement claim where the patentee did not delay in the prosecution of an asserted right, the real measure of relief may be circumscribed by the prejudice caused by the delay. As in the instant case, pure silence accompanied by detrimental reliance may bar all retrospective relief. And the amount of prospective relief may in the same manner be limited by the justifiable reliance of the defendant. Of course, plaintiff has the burden of proving the validity of the issuance of the patent and its applicability to the alleged infringing device.

For the above reasons, this court is compelled to deny defendant's motion for summary judgment estopping plaintiff from enforcing its patent against Beltone.