DYMO INDUSTRIES, INC.

v.

MONARCH MARKING SYSTEMS, INC.

Civ. A. No. CA 3–77–1254–G.

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 3, 1979.

G. Roland Love, Roy W. Hardin, Richards, Harris & Medlock by V. Bryan Medlock, Jr., Dallas, Tex., for plaintiff; Thompson, Knight, Simmons & Bullion by Schuyler B. Marshall, Dallas, Tex., James G. O'Neill, Dymo Industries, Inc., San Francisco, Cal., of counsel.

L. Dan Tucker, Robert W. Turner, Hubbard, Thurman, Turner, Tucker & Glaser, Dallas, Tex., for all defendants; Walther E. Wyss, Robert L. Rohrback, Philip M. Kolehmainen, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., Joseph J. Grass, Monarch Marking Systems, Inc., Dayton, Ohio, of counsel.

**414**

MEMORANDUM OPINION AND ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

The patent-in-suit, United States Letters Patent No. 3,265,553 (the " '553 patent") covers an invention by two German citizens, Oscar Kind and Wilhelm Voight. It is entitled "Apparatus for Printing, Dispensing & Application of Gummed Labels." On March 17, 1965, a German corporation, Meto-Gesellschaft Oscar Kind KG ("Meto") filed the application for the '553 patent. While the patent was pending, Dymo Industries, Inc. acquired all of Meto's assets, including the pending patent application. On August 9, 1966, the patent was ultimately issued.

In 1964, Monarch Marking Systems, Inc. ("Monarch") introduced two hand labelers into the United States market known as Models 116 and 117. Several years later in 1970, Monarch introduced another hand labeler, Model 118. Monarch, in August, 1972, began to sell still another hand labeler, Model 1110. Then in 1975, it introduced Models 1120 and 1126.

Dymo did not file suit against Monarch for infringing the '553 patent until it commenced this action on September 16, 1977. It contends that Monarch's models 1110, 1120, and 1126 infringe the '553 patent. Dymo seeks a permanent injunction against infringement, an accounting to determine damages resulting from the alleged infringement, an award of threefold such damages, and an award of plaintiff's attorneys' fees.

Monarch argues that Dymo's suit is barred by both laches and estoppel. The parties agreed to have the court try separately the issues of laches and estoppel on a designated record.[1] It is on the basis of the extensive record before it that the court issues this opinion and order.[2]

*Laches and Estoppel*

 The bite of laches and estoppel can be fatal. In a patent suit, if a defendant establishes laches, the plaintiff may recover no damages for past infringement. If the defendant proves the elements of estoppel, however, the plaintiff is precluded from receiving not only all past and future monetary relief, but also any injunctive relief. Laches requires proof of an inexcusable delay that prejudices the defendant. Estoppel requires a showing not only of delay and prejudice but also of conduct that misleads the defendant into believing that the patentee has abandoned the patent or will not prosecute its infringement and on which the defendant justifiably relies to his detriment. *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477 (7th Cir.), cert. denied, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Continental Coatings Corporation v. Metco, Inc.*, 464 F.2d 1375 (7th Cir. 1972).

**A. Laches.**

 Meto is guilty of an unreasonable delay in bringing suit. The relevant time period for purposes of laches begins to run when a patentee has either actual or constructive knowledge of the alleged infringement. *General Electric Co. v. Sciaky Bros. Inc.*, 304 F.2d 724 (6th Cir. 1964); *Potash Co. of America v. International Minerals & Chemical Corp.*, 213 F.2d 153 (10th Cir. 1954). In this case, it is apparent that Meto

---

1. It should be noted that plaintiff does not claim in its complaint that the Model 116 line of tools infringes but only that the Model 1110 line infringes. The parties at oral argument stipulated for the purposes of this motion only that any differences between the 116 and 1110 lines will not be used to justify the delay and that those lines are sufficiently similar so that if one infringes, both do.

2. Plaintiff has moved that certain of defendant's designations be excluded as hearsay and that certain other evidence be stricken because

defendant failed to provide plaintiff with copies. This opinion does not rely on any of the alleged hearsay. As to the evidence that defendant refused to copy, the court relies only on Docs. 04039–04041 and on certain deposition testimony. The documents were obtained during discovery from plaintiff's files; plaintiff has transcripts of the depositions. Finally, plaintiff received copies of defendant's designations some months ago. Plaintiff thus can claim no injury. Its motion is denied.

knew of Monarch's activities even before the Kind patent issued. Monarch commenced the manufacture and sale of its Model 116 in 1964 with Meto's knowledge and on April 5, 1965, co-inventor Oscar Kind sent a letter to Monarch stating that Monarch's machine infringed Meto's pending patent. Despite this early knowledge, Dymo did not bring suit until 1977. It is no defense that some of the delay occurred before Dymo acquired the patent. Meto's knowledge and dilatory conduct are imputed to Dymo. *Continental Coatings, Corp. v. Metco, Inc., supra,* 464 F.2d at 1377; *Gillons v. Shell Co.,* 86 F.2d 600 (9th Cir. 1936), *cert. denied,* 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937). Courts, guided by the principle that "laches is an equitable doctrine 'not fixed by any unyielding measure, but to be determined in each case under its factual situation,'" *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (5th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975), have held that the lapse of six years (the statute of limitations) creates the presumption that the delay is unreasonable and shifts the burden away from the moving party to the plaintiff who then must excuse the delay. *Technitrol, Inc. v. Memorex Corp.,* 376 F.Supp. 828 (N.D.Ill. 1974), *aff'd per curiam,* 513 F.2d 1130 (7th Cir. 1975); *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008 (7th Cir. 1970), *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971). In this case, because the delay exceeds six years, the burden to justify it is upon Dymo.

■ Dymo, seeking to explain the delay, contends that it would have been economically unjustifiable to sue the defendant before 1972. Dymo has introduced considerable evidence that both Meto and Dymo employees believed that customers were not satisfied with the Monarch tools and that those tools were not competitive with the plaintiff's until 1972. Evidence further indicates that Monarch also was aware of the weaknesses of the Monarch tools.

The rub is that no matter what economically wise conduct these facts might dictate, they provide no legal excuse for Dymo's prolonged silence. Courts have held that a patentee cannot sit idle while an infringer builds up its business to the point that the monetary reward from an infringement suit justifies its expense. *Baker Manufacturing Co. v. Whitewater Manufacturing Co., supra; Continental Coatings Corp. v. Metco, Inc.,* 325 F.Supp. 165 (N.D.Ill.1971), *aff'd,* 464 F.2d 1375 (7th Cir. 1972). The holding that Dymo here urges would mean that a patentee could wait to sue until the infringer had, through the expenditure of time, effort, and money in building up a sizeable business, seriously prejudiced himself. At the minimum, Dymo should have notified Monarch that it intended to enforce the patent whenever Monarch's position in the market rendered such a suit feasible. Dymo gave no such notice.

■ Having established an unreasonable and inexcusable delay in bringing suit, Monarch next must demonstrate that the delay caused it material prejudice. Courts have held that a prolonged delay gives rise to a presumption that the alleged infringer was prejudiced. *Baker Manufacturing Co. v. Whitewater Mfg. Co., supra; Whitman v. Walt Disney Productions,* 263 F.2d 229 (9th Cir. 1958); *Jones v. Ceramco, Inc.,* 387 F.Supp. 940 (E.D.N.Y.1975), *aff'd,* 526 F.2d 585 (2d Cir. 1975). This presumption is bottomed upon judicial recognition that harm flows inherently from undue delay. Judge Learned Hand described the inevitable effects of such delay in *Dwight & Lloyd Sintering Co. v. Greenawalt,* 27 F.2d 823, 827 (2d Cir. 1928):

> It is not as if Greenawalt were a recent or sporadic interloper in the field; he was in the business, a by no means infertile inventor, an active and driving competitor. We think that Dwight must be charged with knowledge of what Greenawalt had done and proposed to do for certainly 13 years before the suit was filed.

> Meanwhile Greenawalt had built up a very large business, which he estimates to amount in all to about 300,000 tons a year. . . .

Each year as it passes inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded, and, if the time be long enough, the infringer garners the harvest of even the earliest of the 6 years to which recovery is in any event limited, with just confidence that he will not be disturbed. To allow this reasonable inference to be upset, and his financial life perhaps to be gravely deranged, is thought to be incommensurate with the importance of the patentee's stale claims.

■ Dymo has not introduced evidence sufficient to overcome the presumption of prejudice. Indeed, the evidence before the court indicates that the delay has in fact seriously harmed Monarch. First, the delay has impaired Monarch's ability to defend the charge of infringement through proof of withholding prior art and improper inventorship. Evidence has been irretrievably lost. Due to the passage of time, witnesses for both Dymo and Monarch cannot recall events that may have occurred in the 1964–66 period and certain pertinent records and documents cannot be located. Several important witnesses have died. Oscar Kind, co-patentee of the patent in suit, died on January 1, 1974, and as a result, plaintiff's counsel has admitted in response to defendant's request for discovery that it is unable to produce any witness who could testify as to the conception or reduction to practice of the '553 patent or as to Kind's and Meto's knowledge of prior art. In *Advanced Hydraulics, Inc. v. Eaton Corp.*, the court observed that "the loss of the inventor as a witness constitutes the loss of a material witness to the defendant . . . [W]hen the issue of reduction to practice is raised, [it] sorely prejudices a defendant." 415 F.Supp. 283, 284–85 (N.D.Ill.1976). Additionally, Alfred P. Krueger, patentee of U.S. Patent No. 3,051,353 which was granted on August 28, 1962, died on December 7, 1968. Monarch considers Krueger's patent to be one of the most pertinent items of prior art. A third key witness, Michael S. Striker, the attorney who prepared and prosecuted the application for the patent-in-suit, also died while Dymo tarried.

Monarch's prejudice is not limited to a loss of evidence occasioned by the passage of time. Instead, by increasing its sales and devoting substantial resources to the development and manufacture of hand labelers, Monarch has materially changed its position. During the delay, Monarch introduced several new hand labeler models. Additionally, Pitney-Bowes, Inc. acquired the defendant. Many cases have held that such significant changes in position warrant a finding of laches. *Advanced Hydraulics, Inc. v. Otis Elevator Co., supra; American Home Products Corp. v. Lockwood Manufacturing Co.*, 483 F.2d 1120 (6th Cir. 1973); *Potash Co. of America v. International Mineral & Chemical Corp., supra.* The facts of this case are remarkably similar to those that were before the Tenth Circuit in *Potash Co. of America v. International Mineral & Chemical Corp., supra.* The court there held that the combination of witness deaths, faded memories, lost or destroyed documents, and the defendant's heavy capital investment in its facilities during the delay was sufficient to prohibit a plaintiff from claiming damages. 213 F.2d at 160, 161. *See Gillons v. Shell Co., supra*, 86 F.2d at 609.

■ Because plaintiff has been unable to excuse its unreasonable delay in bringing suit or to overcome the presumption of prejudice to Monarch, and because Monarch has demonstrated material harm from the delay, Dymo's claim for damages for past infringement is barred by laches.

### B. *Estoppel.*

■ Estoppel, having more drastic consequences than laches, requires greater proof. Delay alone is insufficient to bar a patentee from enforcing his patent; the plaintiff must also have conducted himself in such a way that he induced the defendant reasonably to rely to his detriment. *Continental Coatings Corp. v. Metco, Inc., supra* 1379–80. Without this additional element, the defenses of laches and estoppel would be indistinguishable. *Siemens AG v. Beltone Electronics Corp.*, 407 F.Supp. 807

(N.D.Ill.1975). A further difference between the two defenses is found in the burden of proof. Whereas, after a six year delay a plaintiff against whom laches has been asserted has the burden of excusing that delay, a defendant who raises estoppel cannot shift the burden of persuasion to the patentee.

The pivotal question in this case is what constitutes misleading conduct for purposes of estoppel. Many courts have held that if a patentee sends a notice of infringement threatening "prompt and vigorous enforcement of the patent," and then by his later inaction induces the infringer to believe that he has abandoned objection, the patentee has committed a sufficiently misleading act to estop his enforcement of the patent. *Advanced Hydraulics, Inc. v. Otis Elevator Co., supra*; *Continental Coatings Corp. v. Metco, supra*. In this case inventor Oscar Kind made just such a charge of infringement. On April 5, 1965, while the patent in suit was pending, he wrote Harold Shaw, Monarch's Vice President and Director of Sales, "Your handoperated price marking and label applying machines Model 116 . . . will . . . infringe several claims of our own pending US Patent application . . . . We have fought successfully competition in our own country based on our existing patent protection and we are taking legal action at present in France also against . . . a German copy of our [machines]." This letter directly charges infringement and with little subtlety threatens enforcing legal action.

Dymo argues that the letter must not be read in a vacuum but must be viewed in the context in which it was sent. At that time, Monarch was considering acquiring Meto. Dymo contends that the April 5, 1965 letter was a part of the negotiations between the companies; Kind was not threatening infringement, but was merely trying to make his company seem more attractive to Monarch as a prospective buyer by enticing Monarch with a patent application that he believed might cover that company's products. The argument is double-edged. That the letter was sent, indisputedly, in the course of negotiations, does not change the letter's threatening nature. On the contrary, Kind charged infringement and implicitly threatened if Monarch did not enter into some business deal with Meto, that his company would sue Monarch. *See Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828 (N.D.Ill.1974), *aff'd per curiam*, 513 F.2d 1130 (7th Cir. 1975). The negotiating leverage was the threat.

At least as important as how Kind intended the letter is how Monarch reasonably interpreted and reacted to it. Harold Shaw, vice president and director of sales for Monarch, received Kind's letter and interpreted it as a veiled threat. Shaw dep. p. 35. A copy of Kind's April, 1965, letter was sent to James Hight, Monarch's outside patent counsel. That Shaw recognized the negotiating leverage of the letter is evidenced by the fact that in July, 1965, he wrote a letter to Hight in which he referred to the Kind letter charging infringement and threatening suit, and stated "In the event that we do not come to any mutual agreement with Meto, we will then have to take a detailed look at the patent situation." Shaw affidavit and Ex. 5, attached thereto. Hight responded, "The patent applications that [Kind] has pending in the United States might possibly cause you some difficulty if and when they issue because Mr. Kind's attorney has the advantage that he is still in the position to amend the claims of the pending applications as he sees fit. Thus, he could cover certain features that your machine has in common with his." *Id.*, Ex. 7. Shaw's contemporaneous actions make plain his state of mind. He thought the letter to be a charge of infringement and threat of suit.

During this same period, Kind made other similar charges that Monarch was also infringing other existing patents. Sometime in 1964, Kind visited Dayton, Ohio, and told Shaw that he had patents protecting his machines. Shaw surmised that this was a reference to Hedinger patent No. 2,522,-225 which Kind also mentioned in his April, 1965 letter. Shaw depo. p. 35. In that

letter he wrote, "Your handoperated price marking and label applying machine Model 116 Senso-ply is infringing the U.S. Patent No. 2,522,224 [Hedinger patent], on claims four and five, and very probably on claim three too. We are the sole licensees under this patent." Significantly, no suit against Monarch was ever brought for infringement of that patent and the patent has since expired. Grass May 28, 1978 affidavit, ¶ 25. Shaw also perceived these as charges of infringement. After Kind's visit to the United States, Shaw contacted outside patent counsel and asked that he look into the possibility of patent problems. Shaw depo. p. 35.

This charge that the defendant was infringing a patent of the plaintiff's other than the patent in suit has in itself been held sufficient conduct to constitute estoppel when the charge is followed by inaction. In an early Seventh Circuit case, *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505 (7th Cir. 1928), the court stated "when the Loew Manufacturing Company charged appellee with infringing its Adams and Rice patent and then withdrew its claim, appellee had justification for enlarging its capital and extending its business." *Id.* at 508. The Adams and Rice patent was not the patent in suit. Thus that court held failure to enforce a patent once a notice of infringement has been given coupled with a long delay on which plaintiffs relied was sufficient conduct to establish estoppel even in the absence of any notice of infringement of the patent in suit. Although this court does not rely on the charge concerning the Hedinger patent alone, it is likely that Monarch, by Meto's inaction on that patent was led to believe that Meto did not regard its existing U.S. patent rights in the hand labeler field as significant.

■ Plaintiff contends that because the patent in suit had not yet issued, no infringement could legally occur until the patent issued the following year, 1966; the Kind letter therefore could not have been a charge of infringement. The fact that the patent in suit was pending at the time does not make the letter any less of a charge of infringement or threat of suit. The letter clearly stated that Monarch's product would infringe several claims of the pending patent and already did infringe claims of the Hedinger patent No. 2,522,224. It implied that Meto intended to sue Monarch for infringing the existing patent and, when the pending patent issued, fully intended to sue for infringing that patent.

■ The fact that Dymo had not acquired Meto at the time of the Kind letter does not relieve Dymo of responsibility for the letter. Dymo, as successor in title to Meto, is charged with those actions of Meto occurring prior to the acquisition. Courts have held that a patent owner is charged with the sum total of the delay of itself and its predecessors. *Continental Coatings Corp. v. Metco, Inc., supra*; *Rome Grader & Machinery Corp. v. JD Adams Mfg. Co.*, 135 F.2d 617 (7th Cir. 1943); *George J. Meyer Mfg. Co., supra.* Furthermore, the court held that a predecessor's charge of infringement is imputed to the later patentee. *George J. Meyer Mfg. Co. v. Miller Mfg. Co., supra*; *Continental Coatings Corp. v. Metco, Inc., supra.* In *Continental Coatings*, the original patentee, Illinois Institute of Technology ("IIT") sent infringement notices to numerous customers of the defendant, whom the defendant had agreed to indemnify. IIT later assigned the patent to Continental Coatings. IIT's charge of infringing followed by a lengthy delay was held sufficient to estop Continental Coatings from suing the defendant for infringement.

Even though Dymo had no knowledge of the Kind letter until this suit was filed, it is not relieved of responsibility for the charge of infringement. First, in acquiring Meto's assets including the pending patent, Dymo also necessarily acquired no greater property rights than Meto had enjoyed with respect to those assets. If, for example, prior art had rendered Meto unable to enforce a certain patent, Dymo's acquisition of that patent could not have vested in Dymo the right to enforce it. Likewise, if Meto had somehow conducted itself so as to eliminate or limit its rights under a patent, Dymo

could not by acquiring the patent revive those extinguished rights. Thus, in acquiring the pending patent, Dymo also acquired the effect that Kind's charge of infringement would have on the pending patent.

The nature of estoppel itself also dictates this result. Estoppel is concerned with preventing injury to the deceived defendant. That an assignee of a patent has no knowledge of its predecessor's charge of infringement is unimportant. The significant fact is that the charge, followed by years of silence, misled the defendant.[3]

The final question for purposes of estoppel is whether Monarch relied on the misleading conduct of the plaintiff or on something else entirely. Dymo contends that Monarch's belief that its production of the model 116 would go unchallenged was not a result of the infringement charge coupled with a lengthy delay, but of reliance on counsel who advised that Meto's patent was invalid. Such reliance, Dymo argues, is insufficient for estoppel. An examination of the facts and the law belies Dymo's contention.

It is true that on December 18, 1968 Monarch received from its outside patent counsel an opinion stating that the patent examiners had overlooked certain prior art including the Krueger U.S. patent No. 3,051,353 and the Kafka U.S. patent No. 2,656,063. Counsel concluded that Meto must be aware of the defect in the Kind patent because despite the number of hand labelers in the U.S. market, no suit had been brought on the patent. Hamisch affid., Ex. 4. But legal counsel's view is also infected by the inaction, for even at this early date, defendant's counsel found that Meto's failure to sue was significant. In any event, there is no evidence that in reliance upon this 1968 opinion Monarch did anything more than continue with the manufacture and sale of its products.

In 1971, Monarch was laying plans to market its model 1110. Joseph Grass, Monarch's patent counsel, concluded that because plaintiff had not asserted the patent in suit in the years following the 1965 Kind letter, it must have been aware of the patent's invalidity. Based on the delay and the prior art, Grass advised Monarch's executive vice president, Thomas Loemker, that it would be reasonable to proceed with the manufacture and sale of the Model 1110. Grass May 18, 1978 affid. It was in reliance upon Grass' opinion that Loemker authorized the expenditure of funds for the further development, manufacture, and sale of Monarch's Model 1110 hand labelers. Loemker affid.

On May 5, 1972, Monarch's outside patent counsel, Willis J. Jensen, rendered an opinion to Grass that plaintiff was not likely to bring a patent infringement suit against Monarch because of the long period of time during which it had not sued for production of the Model 116. Grass May 18, 1978 affid. From about 1970 until the filing of this case in 1977, Monarch incurred product development expenses in excess of $1,000,000 in developing its Models 1110, 1120, and 1126 labelers. Schuba affid. ¶ 11.

While it is true that defendant's patent counsel initially advised Monarch that Meto's patent was invalid for reasons unrelated to delay, Monarch later detrimentally relied on counsel's advice that Meto's long delay in bringing suit indicated that it did not intend to try to enforce its patent. Thus plaintiff's argument that Monarch relied only on counsel's opinion that the patent was invalid is incorrect. Furthermore, *Technitrol, Inc. v. Memorex Corp.* indicate that reliance on counsel's advice that the patent in suit was invalid coupled with reliance on the delay itself satisfies the requirements of estoppel. 513 F.2d 1130.

---

**3.** While the significant focus is the impact of the charge on the defendant, it is interesting to note that Dymo was not as ignorant as it would have this court believe. Although Dymo may not have known of the charge itself, it was well aware of the model 116 as early as 1964, of Meto's patent application, and of the fact that the application was revised to cover the model 116. *See* Ganz depo. 10–19–78, pp. 59, 63; Docs. 04039–04041.

**420**

*Conclusion*

Defendants have established the elements of laches: that the patentee delayed 11 years in bringing suit for infringement; that this delay was inexcusable; and that Monarch suffered prejudice as a result of the delay. It has also established these essential elements of estoppel: that the patentee committed certain conduct causing Monarch to believe erroneously that the patentee had abandoned the patent and would not prosecute its infringement; and that Monarch relied on this belief.

Dymo's claims for damages and for equitable relief are therefore DISMISSED.