**SOUTHWIRE COMPANY, Plaintiff,**

v.

**ESSEX GROUP, INC., Defendant.**

**No. 81 C 3313.**

United States District Court,
N.D. Illinois, E.D.

Sept. 12, 1983.

Steven H. Noll, Hill, Van Santen, Steadman, Chiara & Simpson, Chicago, Ill., Victor M. Wigman, Wigman & Cohen, Arlington, Va., for plaintiff.

Sheldon W. Witcoff, Daniel A. Boehnen, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This case presents a question of considerable practical importance to litigants in patent infringement actions. Defendant Essex Group, Inc. ("Essex") has filed a motion for summary judgment asserting that plaintiff Southwire Company ("Southwire") is estopped from enforcing its patent because of Essex' detrimental reliance on Southwire's non-action. Plaintiff urges that by making this argument, Essex has waived the attorney-client privilege as to any documents that tend to show that Essex relied not on plaintiff's failure to act but rather on the advice of its lawyers that plaintiff's patent was invalid and not infringed by Essex. The parties have not cited any authority directly on point, nor have we found any. The question therefore appears to be one of first impression.

The case is before the court on Essex' motion for reconsideration of our May 24, 1983 ruling granting Southwire discovery of the privileged documents. Southwire had filed a motion to compel production of the documents, arguing that it could not respond to Essex' motion for summary judgment without first having access to the material that Essex claimed was privileged. Our order granting discovery was based in part on the assumption that Essex had abandoned its claim of privilege as to the documents in question. *Southwire Co. v. Essex Group, Inc.,* No. 81 C 3313, slip op. at 8 (N.D.Ill. May 24, 1983). In its motion for reconsideration, Essex asserts that it never abandoned its claim of privilege and that none of its conduct in the course of this lawsuit constituted a waiver of the claim. We ordered the parties to brief the question of waiver.

For present purposes, the parties appear to agree that *A.C. Aukerman Co. v. Miller Formless Co., Inc.,* 693 F.2d 697 (7th Cir.1982) correctly states the law with respect to estoppel and laches in patent cases.[1] To prove laches, a defendant must

---

1. As will become clear *infra* at p. 647, the law of the Seventh Circuit no longer controls in patent cases in this district. *Aukerman* suf-
fices, however, to introduce the questions in issue here.

show that the plaintiff unreasonably and inexcusably delayed enforcement of its rights, and that the delay prejudiced the defendant. Proof of estoppel requires that an alleged infringer establish the elements of laches, affirmative conduct by the patentee inducing the belief that it had abandoned its claims against the alleged infringer, and detrimental reliance by the infringer. *Id.* at 699, 701. Proof of laches bars the patentee from recovery of damages for pre-suit infringement; proof of estoppel bars that and also prospective injunctive relief and damages for post-suit infringement. *Id.*.

In making its claim of estoppel, Essex made the following argument:

> Southwire remained absolutely silent for seven years even though Southwire knew in 1974 that Essex was expanding its business significantly and would likely continue to do so. Essex had expressed its position to Southwire as early as 1969 that Southwire's patents were not infringed. Southwire's conduct indicated an affirmative acquiesence [sic] in this position; its actions told Essex and any other reasonable party that it had abandoned any claim of patent infringement against Essex. Essex's action in reliance was enormous and detrimental. It started five additional plants during Southwire's period of delay.

Motion of Defendant, Essex Group, Inc., for Summary Judgment at 11–12. Rather than responding to the motion for summary judgment, Southwire moved to compel production of documents relating to advice given to Essex by its attorneys as to the validity of the patents in suit and as to infringement of those patents by Essex. Southwire stated:

> It is Southwire's position, *inter alia,* that Essex did not rely on any such delay [by Southwire], but rather relied essentially upon the opinions of attorneys that it was

not infringing any Southwire patents and/or that such patents were invalid. Plaintiff's Combined Motion to Compel Production of Documents and to Extend Briefing Schedule on Defendant's Motion for Summary Judgment at 3.

The narrowest ground on which we could rule that Essex had waived the attorney-client privilege is that, even apart from its assertion of the defense of estoppel, it has through other conduct waived the privilege. Southwire argues that Essex has waived the privilege by stipulating, in connection with another issue in this action, that it relied in part on the advice of its lawyers in building the new plants, or alternatively that the privilege was waived by Essex' former president in a deposition. We begin with the latter argument.

■ In his deposition, Essex' former president Paul W. O'Malley testified, in response to a question asking his opinion whether Essex had infringed Southwire's patent, that he had obtained an opinion of counsel that Essex was not infringing and that the patent was invalid. Deposition of Paul W. O'Malley at 43. However, as Essex has pointed out in its reply brief, O'Malley was neither an officer nor an employee of Essex when he testified at his deposition. *Id.* at 3–4. Since only the party that holds the attorney-client privilege may waive it, O'Malley's testimony did not constitute a waiver of the privilege.[2]

Southwire's other argument is considerably stronger. In the final pretrial materials submitted by the parties, Essex stipulated as follows:

> The Essex decision to construct additional plants for the continuous production of copper rod relied in part upon the advice of its patent advisors that the Essex system used conventional technology and did not infringe any Southwire patents.

Stipulated Fact No. 91.[3] It appears that Essex' purpose in making this stipulation

---

**2.** We also note that Essex' lawyer attempted to prevent the witness from giving the testimony in question by instructing him not to reveal the substance of any attorney-client communica-

tions. Deposition of Paul W. O'Malley at 40, 43.

**3.** Essex does not argue that the "patent advisors" in the stipulation are persons other than

was to aid it in establishing a defense to Southwire's claim of *willful infringement*. *See* Essex Memorandum on Waiver of Privilege, etc. at 5. Southwire argues that because Essex has expressly claimed that it relied on opinions of counsel to build the new plants, it cannot be heard to claim that it has not waived the privilege against disclosure that would otherwise apply to those opinions.

It cannot be questioned that by expressly relying on the opinions of its lawyers as a defense in this action, Essex has made those opinions relevant to the case. Reliance on counsel has long been recognized as evidence that rebuts a claim of willful infringement.[4] However, Southwire has never suggested that it needs access to the privileged information in order to delve into Essex' defense against Southwire's bad faith claim. In fact, since the parties have stipulated that Essex relied on the opinions of its lawyers, it appears that Southwire will not contest that assertion at trial for purposes of making out its claim of bad faith infringement. Rather, Southwire wants the privileged information solely to contest Essex' reliance on the defense of estoppel.

■ Under Fed.R.Civ.P. 26(b)(1), to be discoverable information must be "relevant to the subject matter involved in the pending action." Moreover, the cases cited by both parties on the question whether Essex' assertion of the estoppel defense constitutes

a waiver of the privilege with respect to the requested documents all suggest that in order to be discoverable, the privileged information must pass the threshold test of relevancy to an issue raised by the party claiming the privilege. *See Barr Marine Products Co., Inc. v. Borg-Warner Corp.,* 84 F.R.D. 631 (E.D.Pa.1979) (attorney-client privilege not waived by asserting defense that does not itself raise attorney-client communications as an issue); *Connell v. Bernstein-Macaulay, Inc.,* 407 F.Supp. 420, 422–23 (S.D.N.Y.1976) (where good faith basis to believe that production of attorney-client privileged information would shed light on validity of claim of estoppel, party asserting estoppel deemed to have waived privilege); *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975) (privilege waived where party asserting it has put protected information at issue by making it relevant and application of privilege would deny opposing party access to information vital to defending claim).[5] *See also United States v. Exxon Corp.,* 94 F.R.D. 246, 247–49 (D.D. C.1981); *Pitney-Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 447 (S.D.Fla.1980); *Haymes v. Smith,* 73 F.R.D. 572, 576–77 (W.D.N.Y. 1976). In our earlier decision, relying on what we perceived to be Essex' abandonment of its privilege claim, we declined to address the question whether the evidence sought by Southwire could be pertinent to the estoppel question. *Southwire Co. v. Essex Group, Inc.,* slip op. at 8–10.[6] While

---

its attorneys.

**4.** *See Western Electric Co. v. Stewart-Warner Corp.,* 631 F.2d 333, 337 (4th Cir.1980), *cert. denied,* 450 U.S. 971, 101 S.Ct. 1492, 67 L.Ed.2d 622 (1981); *Maloney-Crawford Tank Corp. v. Sauder Tank Co., Inc.,* 511 F.2d 10, 14 (10th Cir.1975); *General Electric Co. v. Sciaky Brothers, Inc.,* 415 F.2d 1068, 1073 (6th Cir.1969); *Continental Can Co. v. Anchor Hocking Glass Corp.,* 362 F.2d 123, 129 (7th Cir.1966); *Union Carbide Corp. v. Graver Tank & Mfg. Co.,* 282 F.2d 653, 666 (7th Cir.1960), *cert. denied,* 365 U.S. 812, 81 S.Ct. 695, 5 L.Ed.2d 691 (1961); *Julien v. Gomez & Andre Tractor Repairs, Inc.,* 512 F.Supp. 955, 960 (M.D.La.1981); *Sims v. Mack Trucks, Inc.,* 459 F.Supp. 1198, 1219 (E.D.Pa.1978); *Rosen v. Kahlenberg,* 337 F.Supp. 1075, 1085 (M.D.Fla.1971), *rev'd on other grounds,* 474 F.2d 858 (5th Cir.1973).

**5.** Essex reads *Barr Marine* to hold that if the party asserting the privilege has not itself relied on attorney-client communications, the privilege is not waived. We think that is too broad a reading of the case. In any event, as will become clearer *infra,* if a defense of estoppel may be defeated by showing that the party asserting the defense actually relied not on plaintiff's conduct but on its lawyers' advice, the party claiming estoppel has put attorney-client communications in issue, and fundamental fairness dictates that the plaintiff be permitted to examine communications relevant to the estoppel question.

**6.** In our May 24 opinion, we stated that we considered it preferable to decide the question on a complete factual record and in a specific factual context. *Southwire Co. v. Essex Group, Inc.,* slip op. at 9–10.

we have no difficulty in ruling that Essex waived the privilege by expressly relying on its lawyers' opinions in Stipulated Fact No. 91, since the documents must also be relevant to a contested issue in order to be discoverable, we cannot avoid addressing the question left open in our earlier decision.

Essex argues that it has relied solely upon "objective" factors in making its claim of estoppel and that Southwire cannot defeat that claim by showing that Essex did not subjectively rely on Southwire's conduct:

> Not one of the elements of estoppel relied on by Essex turns upon the advice of Essex's counsel .... The defense of estoppel pleaded by Essex does not rely upon any privileged communications between Essex and its counsel.

Essex Memorandum on Waiver of Privilege, etc. at 3. In order to determine whether Essex' argument has merit, we must examine the nature of the estoppel defense.

The first problem we face is that the parties have relied primarily on the law of the Seventh Circuit, and secondarily on decisions from the other federal courts of appeal. As we noted in our earlier opinion, however, slip op. at 7 n. 6, since the newly-created Court of Appeals for the Federal Circuit has jurisdiction over all appeals in patent infringement cases, the law that controls here is that of the Federal Circuit. The parties have not cited any authority from that court or its predecessor, the Court of Customs and Patent Appeals,[7] nor have we found any. While the Seventh Circuit's decision in *Aukerman* was written by a judge of the Federal Circuit, the court relied almost exclusively on Seventh Circuit law. We cannot simply assume that *Aukerman* correctly states the law that governs here.

Even were *Aukerman* followed by the Federal Circuit, it would provide only ambiguous support for Essex' position. In that case, the patentee threatened an infringement suit in 1973 and repeated that warning several times but did not bring suit until 1980. That delay, "coupled with the repeated but unimplemented threats of enforcement, warranted [defendant] in concluding that plaintiff did not intend to bring suit, and therefore that [defendant] could go forward on that assumption." 693 F.2d at 702. The court went on to state that estoppel "can be based on the objective facts, and need not delve into the defendant's subjective beliefs." *Id.*[8] The remainder of the discussion in *Aukerman* suggests, however, that while proof of estoppel may not require evidence of subjective reliance, at least in some circumstances proof of subjective reliance on something other than the patentee's conduct can defeat a claim of estoppel:

> Nevertheless, the argument is made that defendant continued to manufacture, not because it relied on plaintiff's prolonged failure to sue despite the threats, but because of [defendant's] belief that plaintiff's patents were invalid or that defendant was not infringing. *See Armstrong v. Motorola, Inc.,* 374 F.2d 764, 770 (7th Cir.), *cert. denied,* 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967). The record contains little or nothing to show that this was the only or the dominant reason for defendant's position. To the contrary, the objective circumstances (including the exchange of letters between the parties) suggest otherwise

---

7. The Federal Circuit has declared that the patent decisions of the Court of Customs and Patent Appeals will be considered binding in the Federal Circuit. *See South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982).

8. The court cited only *Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d 1375, 1378 & n. 9 (7th Cir.1972) for this proposition. The cited passages in *Continental Coatings* involve a discussion of laches, not estoppel. The court there appears to have held that evidence that the infringer relied on an opinion of invalidity rather than on the patentee's inaction did not suffice to rebut the presumption, applied for the purposes of the laches defense, that an infringer is damaged by a patentee's unreasonable and inexcusable delay. *Id.* at 1378–79. The court went on to hold, however, without citing any additional facts, that estoppel applied as well. *Id.* at 1379–80.

.... [Defendant] could properly infer that [plaintiff] would never sue.

Aukerman's answer is that it asked the district court to compel production of certain of defendant's internal documents (withheld by [defendant] under claims of attorney-client and work product privilege) for the very purpose of discovering the facts needed to show that defendant essentially relied, not on plaintiff's delay or "abandonment," but on the defendant's belief that the patents were invalid or not infringed. The absence of such discovery is irrelevant to this case because the District Court acted within its discretion in denying plaintiff's belated motion which came nine months after defendant asserted its claims of privilege and four months after defendant's motion for summary judgment had been filed and after briefs had been submitted on that motion.... There had been no waiver of privilege by defendant which has relied throughout the case neither on (otherwise) privileged materials nor on any attorney's internal advice that plaintiff's patents were invalid or non-infringed. This case can and should be decided on the existing record which excludes defendant's internal thinking, even if we assume that in some other litigation the internal position of the accused infringer might be relevant and discoverable.

*Id.* at 702.

Here, in contrast to *Aukerman,* the record does contain some support for Southwire's contention that Essex relied on its patent attorneys and not on Southwire's inaction. *See* Stipulated Fact No. 91. Moreover, the equitable considerations arising from plaintiff's delay that counseled in favor of denying plaintiff discovery in *Aukerman* do not exist here. Finally, *Aukerman*'s citation, with apparent approval, of *Armstrong v. Motorola, Inc.,* 374 F.2d 764, 770 (7th Cir.), *cert. denied,* 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967), suggests that

Southwire's position with respect to the question of subjective reliance is sound: in *Armstrong,* the court denied application of estoppel, relying in part on the fact that the infringer "did not rely upon any inaction [of the patentee] but instead decided ... that it was not infringing his patents and therefore would not take a license." *Id.*

*Aukerman* must also be read in light of *Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258 (7th Cir.1982), which was neither overruled nor distinguished in *Aukerman.* In discussing the burden of proof on estoppel, the *Naxon* court cited with approval *Jensen v. Western Irrigation & Manufacturing, Inc.,* 650 F.2d 165, 169 (9th Cir.1980), which it read as holding that a defendant "must show that it actually relied on misleading conduct to his detriment," and *TWM Manufacturing Co. v. Dura Corp.,* 592 F.2d 346, 350 (6th Cir.1979), which it characterized as holding that a defendant "must show it was misled in some fashion by plaintiff." *Naxon,* 686 F.2d at 1263–64. The court also quoted the following definition of estoppel: " 'he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' " *Id.* at 1263 n. 8 (quoting *Dickerson v. Colgrove,* 100 U.S. 578, 580, 25 L.Ed. 618 (1879)) (emphasis supplied). *Naxon,* therefore, suggests that the defendant's subjective intent may be relevant to the question of estoppel.[9] *See also Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975) (estoppel arises " 'only when one has acted so as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice' ") (quoting *Lebold v. Inland Steel Co.,* 125 F.2d 369, 375 (7th Cir.) (Lindley, J.), *cert. denied,* 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749 (1941)).

9. *See also Saverslak v. Davis-Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980), a breach of contract action, in which the court stated that an estoppel "arises only when a party's conduct *misleads* another to believe that a right will not be enforced *and causes him to act to his detriment in reliance upon his belief*" (emphasis supplied).

The other courts to have considered whether evidence of reliance on an opinion of counsel that the patent was invalid or not infringed is relevant to the question of estoppel have for the most part held that it is, although some have ruled, in the circumstances of the particular case at hand, that proof of such reliance was insufficient to overcome the defense. *See Armstrong v. Motorola, Inc.*, 374 F.2d at 770; *Metropolitan Wire Corp. v. Falcon Products, Inc.*, 528 F.Supp. 897, 904–06 (E.D.Pa.1981); *Dymo Industries, Inc. v. Monarch Marking Systems, Inc.*, 474 F.Supp. 412, 419 (N.D.Tex. 1979) (considering evidence of reliance on opinion of invalidity but noting that opinion was based in part on plaintiff's failure to sue; estoppel not defeated by partial reliance on such an opinion of counsel where coupled with actual reliance on delay); *Autoclave Engineers, Inc. v. Duriron Co.*, 190 U.S.P.Q. 125, 134 (E.D.Pa.1976) ("defendant made a rational business decision (calculated gamble) that if suit were instituted, it would not be successful. This cannot be construed as reliance that Autoclave would not sue."). In *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 831–32 (N.D.Ill. 1974), *aff'd*, 513 F.2d 1130 (7th Cir.1975) (per curiam), one might construe the court's opinion as using evidence of reliance on an opinion of invalidity to *support* a defendant's estoppel claim. The court in *Dymo Industries*, however, read *Technitrol* as holding that where reliance on delay itself is coupled with reliance on counsel's opinion that plaintiff's patent is invalid, the requirements of estoppel are satisfied. *Dymo Industries*, 474 F.Supp. at 419.

Finally, there appears to be general agreement among the other circuits to have addressed the question that the *Naxon-Advanced Hydraulics-Lebold* standard for estoppel correctly states the law. *See, e.g., Jensen v. Western Irrigation & Manufacturing, Inc.*, 650 F.2d 165, 169 (9th Cir.1980); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1160 (6th Cir.1980); *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir.), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *TWM Manufacturing Corp. v. Dura Corp.*, 592 F.2d 346, 350 (6th Cir.1979); *Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (8th Cir.1941) ("No evidence of deceit is present in the instant case and no proof that appellants altered their conduct to their prejudice on account of the delay"); *Siemens Aktiengesellschaft v. Beltone Electronics Corp.*, 407 F.Supp. 807, 809–10 (N.D.Ill. 1976); *Minnesota Mining & Manufacturing Co. v. Berwick Industries, Inc.*, 373 F.Supp. 851, 869 (M.D.Pa.1974).

Even were we to view Essex' "objective" evidence as entitling it to an inference or prima facie showing of reliance, fairness dictates that Southwire be permitted to rebut the showing. The supposed "objective" —"subjective" dichotomy is in a way illusory. Essex' "objective" evidence, which may include proof of delay, unfulfilled threats of suit and the like, is merely evidence which permits a trier of fact to infer that Essex actually relied on those factors.[10] If Southwire has evidence that Essex actually relied on something other than Southwire's actions or silence, that serves to undercut the inference that Essex seeks to have drawn from its "objective" evidence. In short, Essex asserts that it relied on Southwire's delay in building the four plants; Southwire says that Essex relied on something else. What Essex is arguing here is that Southwire is not entitled to prove what Essex actually relied on, even though the court should be entitled to infer actual reliance from Essex' own proof. The unfairness of Essex' position is manifest.

This unfairness is compounded by Essex' admission, in Stipulated Fact No. 91, that it relied (in part) on the opinion of its patent advisors in building the plants. In effect, Essex is saying, "we can say we relied on our lawyers, but you can't."

We express no view as to the merits of Essex' motion for summary judgment on the estoppel question or the strength of the

---

**10.** We need not decide for the time being the precise contours of the estoppel defense; we will address that issue in ruling on Essex' not yet fully briefed motion for summary judgment.

evidence with respect to its claimed reliance on its lawyer's opinions. However, Essex' raising of the estoppel defense as a dispositive issue in this case, coupled with its use of its patent counsel's opinions to prove reliance in connection with another issue in this case, has waived the attorney-client privilege and put those opinions and the question of its actual reliance in issue. Southwire is entitled to discover the pertinent attorney-client documents.

We agree with Essex, however, that Southwire is not entitled to discovery of documents that do not pertain in any fashion to the patents in suit. We have examined the privileged documents submitted to us by Essex and have discovered that most of them do not concern the two patents identified in Southwire's complaint, U.S. Letters Patent Nos. 3,317,994, and 4,129,170. Southwire has not advanced any arguments that would lead us to conclude that it should be permitted to discover otherwise privileged material that relates to patents not at issue in this action. We disagree with Essex' narrow view of permitted discovery, however. Essex appears to argue in its brief that discovery should be limited to five documents, Nos. 12, 13, 33, 40, and 41, which are the only documents it identified as "pertain[ing] to validity or infringement." *See* Essex Memorandum on Waiver of Privilege, etc. at 6. The documents that we will permit Southwire to discover give the entire course of Essex' validity/infringement investigation and are all therefore helpful in determining whether Essex

relied on Southwire or rather on its own patent lawyers' advice. These are documents 9, 10, 12, 16, 18, 20, 22, 33, 40, 41, 48, 63, 66, 67, 71, and 73.[11]

In conclusion, Essex' motion for reconsideration is granted in part and denied in part. Essex is to produce documents 9, 10, 12, 16, 18, 20, 22, 33, 40, 41, 48, 63, 66, 67, 71, and 73 (or redacted copies as provided in n. 11) within 14 days.

---

11. Documents 66 and 67 relate to a patent infringement action by Southwire against another company that used the "continuous casting" method of copper rod manufacture.

Documents 12, 16, 33, and 40 give validity and/or infringement opinions as to many patents other than the two in suit here. Essex need not disclose the entire documents. From document 12, it must disclose the cover letter, page 1 of the patent review through ¶ 2, and the review of the '994 patent on pages 6–7. From document 16, it must disclose page 1, page 2 through ¶ 4, and the '994 review on pages 23–24. From document 33, it must disclose pages 1 and 2 and the '994 review on page 8. From document 40, it must disclose pages 1 through 8 ¶ 1, and the '994 review on pages 22–23.

Essex attempts to differentiate between documents as to which attorney-client privilege was claimed and those as to which work product privilege was claimed. We think that the same considerations that required our conclusion that Essex had waived the attorney-client privilege as to the listed documents also dictate that the supposed work-product documents be disclosed under the standard set forth in Fed.R. Civ.P. 26(b)(3). Moreover, nothing in the work-product documents indicates that they were " 'prepared or obtained *because* of the prospect of litigation.' " *Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir.1983) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 at 198 (1970)) (emphasis original in *Binks* ).