**THK AMERICA, INC., Plaintiff,**

v.

**NSK CO. LTD., and NSK Corporation, Defendants.**

**No. 90 C 6049.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 30, 1993.

John E. Kidd, John E. Daniel, Michael A. O'Shea and Jeffrey Sonnabend of Rogers & Wells, New York City; Robert E. Wagner, Alan L. Barry and James J. Jagoda of Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, local counsel (James E. Armstrong, III, and Ken–Ichi Hattori of Armstrong, Westerman, Hattori, McLeland & Naughton, Washington, DC, of counsel), for plaintiff, THK America, Inc.

Charles E. Miller and Scott D. Stimpson of Pennie & Edmonds, New York City, for defendants, NSK Ltd., and NSK Corp.

## ORDER

NORGLE, District Judge.

Before the court are objections of defendants NSK Ltd. and NSK Corporation (collectively "NSK") to the August 6, 1993 orders of Magistrate Judge Rosemond, Jr. For the following reasons, the Magistrate Judge's orders are affirmed.

The motions were heard by the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). NSK's objections to the orders are governed by a "clearly erroneous or contrary to law" standard of review pursuant to Fed.R.Civ.P. 72(a). The court finds that the Magistrate Judge's orders are supported by the record and that NSK has failed to meet its burden in seeking to have the orders overturned. Additionally, the Magistrate Judge's order directing NSK to de-designate all "Attorney's Eyes Only" designated documents and re-classify them as either "Confidential" or "Non–Confidential" may appear sweeping at a casual glance; however, given the protracted discovery disputes and the age of the litigation, permitting NSK to re-classify the documents or subjecting NSK's "Attorney's Eyes Only" classification to the Magistrate Judge's approval is not workable. Further, the court cannot ignore NSK's dilatory tac-

tics to evade the court's prior orders regarding the protective order and its parameters. "[L]itigation under the Federal Rules of Civil Procedure is not supposed to be merely a game, a joust, a contest; it is also a quest for truth and justice." *Ash v. Wallenmeyer*, 879 F.2d 272, 275 (7th Cir.1989). Courts are too overburdened with heavy caseloads and backlogs to police NSK's every classification decisions when NSK has demonstrated unwillingness to adhere to the guidelines provided in the protective order. Therefore, NSK's objections to the Magistrate Judge Rosemond's August 6, 1993 orders are rejected in their entirety and the orders are affirmed.

It is further ordered that THK submit its petition for attorney's fees, detailing the specific tasks assumed to file the motion, amount of time expended on those tasks, and the fee rate, within twenty-one days for the Magistrate Judge's review.

## ORDER

ROSEMOND, United States Magistrate Judge:

On or about April 20, 1992, plaintiff THK America, Inc. filed a *"Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions."* *The motion is granted.*[1]

The underlying action is for patent infringement brought by THK America, Inc. ("THK") against NSK Corporation ("NSK") and its parent company, NSK Company, Ltd. ("NSK Japan") of Tokyo, Japan.

Two United States patents are at issue, *to-wit* : United States Patent No. 4,040,679 ("the '679 patent") entitled *"Slide Way Bearing"* and United States Patent No. 4,253,709 ("the '709 patent") entitled *"Four–Way Loaded Type Linear Bearing."* Both patents relate to linear guides. Such technology is primarily used in the machine tool and automotive industries.

Linear guides enable extremely heavy loads to be moved and worked on in industri-

al applications. For example, linear guides are used in the machine tool industry to move metal, plastic and other objects so that they can be cut, drilled or otherwise shaped into a desired tool or component. The patents are based on inventions by Mr. Hiroshi Teramachi.

Allegedly, Mr. Teramachi assigned the patents at issue to THK's Japanese parent company, THK Ltd. ("THK Japan"). THK Japan, in turn, granted an exclusive license to THK to make, use, and sell products which embody the patented inventions. The linear guides that THK sells in the United States are manufactured in Japan by its parent, THK Japan. At the time of the filing of the lawsuit, Mr. Teramachi was the president of both THK and THK Japan.

THK's motion is essentially predicated upon two orders of court, *to-wit* : the Magistrate Judge's Order of August 20, 1992, *affirmed in relevant part by Order of the District Judge dated October 18, 1991*, and the parties' subsequent agreed upon protective order styled *"Order On Stipulation Under Rule 26(c), Fed.R.Civ.P. For The Preservation And Protection Of Confidential Information"* entered by the District Judge *nunc pro tunc* December 24, 1991.

The Magistrate Judge's August 20, 1991 Order reads in pertinent part as follows:

\* \* \* \* \* \*

THK is a company with fewer than 40 employees. Its engineering staff consists of one engineer and several assistants. Purportedly, THK relies on THK Japan in significant respects for technical support and other business assistance. As a result, asserts THK, it does not have the technical and other resources in house that would permit it to litigate this case without the outside assistance of its parent—THK Japan.

\* \* \* \* \* \*

*The protective order provisions directed against THK Ltd. personnel.* Defendants seek to include in Paragraph 6 of the

---

1. The modification to the *Protective Order* sought by the above motion would preclude defendants' in-house counsel from reviewing documents des-

ignated "Attorney's Eyes Only." By Order dated June 3, 1992, the Magistrate Judge granted this aspect of plaintiff's motion.

proposed protective order terms and conditions which essentially preclude present and past employees of THK Japan from viewing defendants' confidential documents. **Under the defendants' proposals, their confidential documents could not be shown to Mr. Teramachi.**

We agree with plaintiff that defendants' proposals would unduly "hamstring" the plaintiff's litigious efforts. The prime example being that defendants' proposals would preclude plaintiff from conferring with Mr. Teramachi—its own president and the purported inventor of the products at issue. Plaintiff correctly reasons that, as the chief executive officer of THK and the inventor of the patented products at issue, Mr. Teramachi is the most knowledgeable person about the issues in this case. Clearly, he should be able to assist in the evaluation and prosecution of his company's suit on his patented inventions.

The protection sought by defendants is too broad, and would make the protective order "one-sided" in defendants' favor. *Both sides should be permitted to look to the internal staff and other resources of their parent corporations for assistance in translating and interpreting Japanese documents, and for other assistance as well.* Defendants have failed to carry their burden in demonstrating the reasonableness of prohibiting the disclosure of confidential materials to individuals previously or presently connected with THK Japan.

\*   \*   \*   \*   \*   \*

Accordingly, it is adjudged, decreed, and ordered as follows:

1. *Defendant's Motion For A Protective Order* is denied in part and granted in part.

2. To the extent that defendants' motion seeks to preclude disclosure of confidential materials to present and past employees of THK Japan, it is denied.

\*   \*   \*   \*   \*   \*

3. To the extent that defendants' motion seeks to require a party to inform the other side as to whom a party intends to disclose confidential materials, it is granted.[2]

The District Judge's affirming order reads in pertinent part as follows:

## II. *Defendants' Motion for Protection Order.*

Defendants object to the magistrate-judge's modification of certain provisions of its proposed protective order. The court finds that the magistrate-judge properly exercised his discretion in making the changes. **The court adopts the magistrate-judge's report and recommendation on this discovery matter in full.** *Defendants' protection order stands as modified by the magistrate-judge.*[3]

The Magistrate Judge's August 20, 1991 Order granted in part and denied in part defendants' May 22, 1991 "*Motion For A Protective Order*." In that motion, NSK stated that "[p]laintiff and defendants agree in principle that a protective order has become necessary in view of the discovery sought to date and which will be sought by plaintiff and defendants, *inasmuch as such discovery involves and will involve the disclosure of the parties' trade secrets and other confidential research, development and commercial information.*"[4]

As revealed by the above-quoted excerpts of the August 20th Order, from time to time the Order uses the term "*confidential materials*". "Confidential materials" is a term of art crafted by the defendants themselves, and was employed in the Order so that they and the plaintiff would know exactly what was being discussed and ordered.

Attached to "*Defendants' Motion For A Protective Order*" was a proposed protective order styled "*Order Under Rule 26(c), Fed. R.Civ.P. For The Preservation And Protec-*

---

**2.** 21 U.S.P.Q.2d 1705, 1708 (N.D.Ill.1991).

**3.** *THK America, Inc. v. NSK Ltd,* Case No. 90 C 6049, *Order,* at 1 and 2 (N.D.Ill. October 18, 1991) (Judge Bua).

**4.** *Defendants' Motion For A Protective Order,* at 1 (May 22, 1991) (emphasis added).

*tion Of Confidential Information."* [5] The very title of the *Order* states that it is submitted pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure. And Rule 26(c)(7) provides for the protection of "a trade secret or other confidential research, development, or commercial information." Consistent with Rule 26(c)(7), defendants' proposed protective order defined the category styled *"Confidential Materials"* as "trade secrets or other confidential research, development or commercial information belonging to [a] party." [6] Defendants' draftsmanship in this regard was consistent with the common practice where protective orders are concerned:

> 1. As used in this Order, "confidential material" shall refer to any document, or any portion thereof, which contains information that is a trade secret or other confidential research, development or commercial information, within the meaning of Rule 26(c)(7), Fed.R.Civ.P.[7]

Such orders are common practice because there is no absolute privilege against production of trade secrets and similar confidential business information.

As reflected by the above-quoted language of defendants' proposed order, the sole subject matter of the order was confidential materials as defined above, and who was to have access to such confidential materials. The very first paragraph of the proposed order so states:

> WHEREAS, discovery in this action will entail the disclosure of the parties' respective trade secrets or other confidential research, development or commercial information.[8]

The proposed order then goes on to create tiers of access to such confidential materials. The first tier is defined in Paragraph Six of the order.

*Paragraph 6* of the proposed protective order was one of the subjects of the Magistrate Judge's August 20th Order and concerned to whom documents designated as "Confidential Materials", *i.e.,* trade secrets or other confidential research, development and commercial information belonging to a party, could be disclosed. And as reflected by the above-quoted excerpts of the ordering paragraphs of the August 20th Order, to the extent that the defendants' motion sought to preclude disclosure of confidential materials, *i.e.,* trade secrets or other confidential research, development or commercial information belonging to a party, to present and past employees of THK Japan, it was unsuccessful. *The Order directed defendants to do so.*

■ *Paragraph 7* of the proposed protective order created a more restrictive tier, designated as "Attorney's Eyes Only." This designation was for a small discrete group of *"extremely confidential"* documents within the larger category of confidential materials. It was never intended to be the most frequently used designation. Rather, it was intended to be used for extremely sensitive trade secrets and, thus, to be used sparingly. And this view is consistent with the general concepts of federal discovery which are that the federal discovery rules are to be liberally construed and there are to be no unnecessary restrictions on relevant discovery.

■ In an Affidavit, Mr. David J. Blosser, in-house counsel for NSK's parent company,

---

5. Exhibit A, *"Defendants' Motion For A Protective Order."*

6. Exhibit A.

7. *Lutzke v. WGN Continental Broadcasting Co.,* Case No. 83 C 5043, *Protective Order* (N.D.Ill. 1984) (Judge Kocoras), *copy attached as Exhibit 7 to, "Plaintiff's Reply Memorandum In Support Of Its Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions." See also, Procter & Gamble Co. v. Nabisco Brands, Inc.,* 111 F.R.D. 326, 327 n. 1

(D.Del.1986) (" 'Proprietary Information' is a defined term in the Order ... [and] includes the producing party's trade secrets, confidential research and various other confidential commercial information").

8. *"Order On Stipulation Under Rule 26(c), Fed. R.Civ.P. For The Preservation And Protection Of Confidential Information",* attached as Exhibit 1 to, *"Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions."*

NSK Ltd. states, among other things, the following:

\* \* \* \* \* \*

3. I am familiar with the procedures employed by both NSK America and NSK Japan in designating documents under the Protective Order.

4. Defendants have always understood that, pursuant to the terms and spirit of the Protective Order, the majority of confidential information and documents of the parties would not be disclosed to employees of their competitors. Defendants have understood that the "attorneys eyes only" designation provided for in the Protective Order would therefore be the predominant confidential designation. Defendants would not have agreed to any protective order that contemplated disclosure of the majority of confidential documents to employees of competitors.

5. Defendants have been advised by counsel as to the meaning of the "attorney eyes only" designation referred to in paragraph 7 of the Protective Order. The standard used by defendants in designating documents as "attorneys eyes only" is whether disclosure of the documents to defendants' competitors would be competitively damaging. Such documents are considered by defendants to be "extremely confidential" and were therefore marked with the "attorneys eyes only" designation.[9]

\* \* \* \* \* \*

*The above-quoted statements are preposterous and contemptuous.* Preposterous in that they are contrary to the 1991 written submissions of NSK to the Court. Contemptuous in that the position espoused contravenes the record, as well as, the August 20th Order and the December 24th Protective Order of this Court, and reflects a calculated and intentional effort to avoid the consequences of those Orders.

Defendants act as if the December 24th Protective Order was created and agreed to in a vacuum. It was not. Neither defendants nor the plaintiff had *carte blanche* to agree to anything that they desired. They made their agreements, concessions, and compromise against the backdrop and within the parameters and context of the existing orders of this Court, particularly the August 20th Order and the District Judge's Order affirming in whole the matters at issue now.

To show the degree of the defendants' contempt, we highlight the prior written statements made by NSK in connection with its May 22, 1991 *"Motion For A Protective Order."* Defendants open their May 22d *"Memorandum In Support Of Defendants' Motion For A Protective Order"* requesting "entry of an Order, in the form annexed to the accompanying *'Defendants' Motion For A Protective Order',* that relevant trade secrets or other confidential research, development or commercial information of the parties (hereinafter "Confidential Materials") be disclosed and used only in designated ways."[10] Continuing, defendants acknowledge that "[s]ince the commencement of this patent infringement action, the parties have come to realize that compliance with certain legitimate discovery requests will require each side to produce its *Confidential Materials.* (*See,* paragraph 3 on page 2 of Exhibit 'A' annexed hereto which is a copy of the first three pages of 'Defendant [NSK Japan's] Responses To Plaintiff's Interrogatories 1–3')."[11] Paragraph 3 of the *"General Objections"* of *"Defendant [NSK Japan]'s Responses To Plaintiff's First Set Of Interrogatories (1–3) To Defendants"* read as follows:

3. To the extent that THK's interrogatories seek discovery which would entail the disclosure of trade secrets or other confidential research, development or commercial information, [NSK Japan] objects to

---

9. Exhibit 1, *"Memorandum In Opposition To Plaintiff's Motion To De–Designate Documents, To Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions"* (hereinafter "defendants' opposing brief").

10. *"Memorandum In Support Of Defendants' Motion For A Protective Order,"* at 1.

11. *Id.,* at 2.

them pending the entry of a protective order.[12]

Taking the analysis step by excruciating step, it cannot be disputed that the defendants knew and acknowledged that THK's interrogatories sought disclosure of trade secrets or other confidential research, development or commercial information. And it is beyond dispute that Paragraph 6(d) of the proposed protective order concerned the disclosure of such confidential materials to the employees of the receiving party. The defendants so thought, as reflected by the following assertion in their May 22d brief:

> *First*: With respect to the provision in paragraph 6(d) that persons having access to Confidential Materials (other than materials produced "For Attorneys' Eyes Only" under paragraph 7) may include a limited number of certain employees of the receiving party, defendants request that such provision include the condition that:
>
> > "such individuals shall not have been employed by a competitor of the designating party for at least six (6) months prior to the commencement of this action, and without substitution in excess of four (4) other such employees for any six (6) month period except in cases of death or incapacity of a previously designated employee;"[13]

*Paragraph 7* of the proposed protective order concerned "Confidential Materials which the designating party or its counsel considers to be *extremely* confidential [which] shall, in addition to the designation set forth in paragraph 3, be labeled or marked with a designation containing the words 'Attorney's Eyes Only.'"[14] Clearly, as the very language of defendants' proposed protective order reflects, *"For Attorney's Eyes Only"* documents were to be an *extremely* discrete number of documents from within the category of "confidential materials."

As defendants fully understood, paragraph 6(d)—drafted by them—provided for the disclosure of confidential materials, *i.e.*, trade secrets or other confidential research, development or commercial information belonging to a party, to a limited number of employees of the receiving party. Defendants wanted the employees of the receiving party— THK—to be individuals who had not been employed by THK for at least six months prior to the commencement of the lawsuit. The August 20th Order rejected this aspect of the proposed protective order. In any event, it is unequivocally clear from the language of the proposed order itself that trade secrets and other confidential research, development and commercial information were going to be disclosed to THK. Only the *extremely* confidential materials from within the trade secrets or other confidential research, development or commercial information was to be designated *"For Attorney's Eyes Only."* Perforce, this had to be a small group of documents. Contrary to defendants' assertions, the "Attorney's Eyes Only" designation was not to be the predominant confidential designation. *Defendants' assertions in this regard are made in bad faith.*

Defendants state that the standard used by them in designating documents as "Attorney's Eyes Only" is whether disclosure of the documents to defendants' competitors would be competitively damaging. Such documents, defendants argue, are **"extremely confidential."**[15] This is not an appropriate standard, and never was. Under this standard, defendants' trade secrets and other confidential research, development and commercial information would never be produced to THK and its corporate parent, as required by outstanding orders of court. Defendants' simplistic blanket claim that all information the disclosure of which would be "competitively damaging" is perforce "extremely confidential" is contrary to the very purpose of the parties' agreed upon two-tiered Protective Order. Such a standard not only eviscerates the District Judge's December 24th

---

**12.** Exhibit A, *"Memorandum In Support Of Defendants' Motion For A Protective Order."*

**13.** *Id.*, at 3.

**14.** *"Order Under Rule 26(c), Fed.R.Civ.P. For The Preservation And Protection Of Confidential Infor-*

*mation,"* at 7, attached as *Exhibit A to, "Defendants' Motion For A Protective Order"* (emphasis added).

**15.** *Affidavit of David J. Blosser, attached as Exhibit 1 to defendants' opposing brief.*

*Protective Order*, but also the Magistrate Judge's August 20th *Order*.

■ Contrary to defense counsel's assertions, it is their place and their responsibility to ensure that the proper confidential designations are assigned to the documents produced. Counsel may not leave it up to the client to determine "which of their documents are and are not sensitive"—which we note in passing is also not the applicable standard for "Attorney's Eyes Only".[16]

At all relevant times in this litigation, the defendants have known that the Magistrate Judge's August 20th Order required them to disclose trade secrets and other confidential research, development or commercial information to personnel of THK and THK Japan. In their objections to the August 20th Order, defendants state as follows:

### C. *Summary of Argument.*

The Magistrate's opinion and Order are clearly erroneous and contrary to law for the following reasons:

(1) Contrary to settled case law, the Order gives one of defendants' major international competitors, a *non-party to this action*, access to defendants' trade secrets and other confidential information.[17]

**[and]**

### II. *ARGUMENT.*

The issue is whether or not the Magistrate correctly ordered that defendants' trade secrets and other confidential information may be given to employees of defendants' non-party competitor—THK Japan.[2]

---

2   The documents and information in question are those that will be marked "confidential." Although "extremely confidential" documents

may be marked with the further designation of "attorneys-eyes-only" (see, Exhibit 2, paragraph 7), documents marked only with the "confidential" designation are exactly that—*confidential*. The parties initially agreed on this two-tiered approach to afford *appropriate* additional assistance (four employees of the parties) with the "confidential" materials. But now plaintiff distorts the meaning of this attempted accommodation, insisting on allowing access of defendants' trade secrets and other confidential information to its employees that are also employed by its *non-party* parent corporation—THK Japan.[18]

**[and]**

[P]laintiff insists that THK Japan employees must ... have access to defendants' confidential information and trade secrets.[19]

**[and]**

The Magistrate's Order ... poses the real danger of upsetting the equities in this case: THK Japan—a non-party—would gain access to trade secrets and other confidential information of both defendants....[20]

**[and]**

For these reasons, defendants respectfully submit that the Magistrate's Order, placing defendants' trade secrets and other confidential information into the hands of a non-party competitor, is clearly erroneous and contrary to law.[21]

**[and]**

Defendants are willing to allow plaintiff the assistance of four persons employed by the *party* (an accommodation that the case law shows to be purely gratuitous), so long as these employees are not also employed by non-party competitors. But plaintiff should *not* be allowed to expand this assistance to the extraordinary extent of allowing trade secrets and other confidential

---

16.   Defendants' opposing brief, at 14.

17.   *"Defendants' Objections Under Rule 72(a), Fed. R.Civ.P. To The Magistrate's Order On Defendants' Motion For A Protective Order"*, attached as Exhibit 3 to, *"Plaintiff's Reply Memorandum In Support Of Its Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions."*

18.   Exhibit 3, at 3 (emphasis added).

19.   Exhibit 3, at 4.

20.   Exhibit 3, at 7.

21.   Exhibit 3, at 8.

information into the hands of persons actively plying this art for a *non-party that is* defendants' most *aggressive international competitor.*[22]

Accordingly, defendants have always known **(and always argued)** that the August 20th Order and the December 24th Protective Order required the disclosure of trade secrets and other confidential research, development and commercial information to THK and its corporate parent.

Defendants have produced between 75,000 and 90,000 pages of documents. The minimum figures to which there is apparent tentative agreement are as follows: Out of about 75,000 pages produced, approximately 25,000 pages have been given no confidentiality designation because they are non-confidential publicly available documents such as catalogues, patents and the like. Of the remaining 50,000 pages produced, about 11,000 pages have been designated "confidential," while approximately 39,000 have been designated "Attorney's Eyes Only." The parties count the number of pages differently and, therefore, have different calculations. However, even under the defendants' calculations at least 79% of the documents produced were designated as "Attorney's Eyes Only." This is absurdly high.

Defendants' wholesale use of "Attorney's Eyes Only" stands the Protective Order on its head. What was intended by the very language of the Protective Order to be a very *limited* category reserved for specially sensitive documents has become the most used category by far in the lawsuit. Rather than operating as a limited exception, the "Attorney's Eyes Only" designation has been used by the defendants almost *four times more* than the lower confidentiality designation. This is a blatant misuse of the "Attorney's Eyes Only" designation and a blatant effort to avoid the dictates of the August 20th Order and the subsequent December 24th Protective Order—perforce drafted and agreed upon within the shadow of the August 20th Order.

The record demonstrates that the defendants' abuse of the "Attorney's Eyes Only" designation is not due to inadvertence or mistake. Rather, it is a deliberate attempt to avoid the consequences of the Magistrate Judge's August 20th Order and the District Judge's October 18th Order rejecting defendants' objections in this regard and affirming the Magistrate Judge's Order.

Defendants argue today that they were always free under the Protective Order and the August 20th Order to designate essentially all of their confidential documents as "Attorney's Eyes Only" to prevent their disclosure to competitors. As demonstrated above, this was never so. And as further demonstrated, defendants never held such a belief. As THK correctly notes, if the Protective Order had permitted defendants (as they now claim) to designate *all* their documents as "Attorney's Eyes Only," defendants would not have needed to file their May 22, 1991 motion seeking to preclude the disclosure of NSK trade secrets and similar confidential research, development and commercial information to THK and its non-party parent. Defendants' position today is a deliberate, after-the-fact attempt to evade the consequences of court orders issued in this case.

Other indicia of the defendants' misuse of the "Attorney's Eyes Only" designation are the following:

***Defendants have designated as "Attorney's Eyes Only" THK Japan memoranda*** regarding linear guides dating from 1979 to 1983. Unbelievably, defendants have designated as "extremely confidential" documents which they did not author, but which were authored by THK Japan anywhere from 9 to 13 years ago.[23]

Defendants **admit** that some of the documents produced by them were marked "Attorney's Eyes Only" even though authored by THK Japan. Defendants reason that "[i]t is not the **content** of these documents that warrants this designation ... but the fact

---

22. Exhibit 3, at 12.

23. *See,* May 26, 1992 *Affidavit of John E. Daniel,* at 2–4 (filed under seal).

that NSK *has* them."[24] The true import of defendants' contention is that this use of the "Attorney's Eyes Only" designation is needed and appropriate in order to keep hidden from plaintiff the fact that the defendants have such documents in their possession. In other words, defendants are asserting that industrial espionage operates as a ground for designating documents **extremely confidential,** *i.e.,* "Attorney's Eyes Only." Since **"[n]othing contained in the ... [documents], notes or drawings can possibly be reasonably construed as a trade secret [— and defendants so readily admit—] It is equally incredible that the methods by which they were obtained could constitute a trade secret."[25]**

According to THK, defendants have designated as "Attorney's Eyes Only" hundreds of published, publicly available documents, among which are catalogues, patents, books, magazines, technical journals and newspaper articles. Documents distributed to the public may not even be designated as "confidential," let alone be considered as "extremely confidential" so as to warrant "Attorney's Eyes Only" designation. Since the parties reduce the documents produced to pages or speak in terms of such, nothing prevented the defendants from designating the trade secret pages of a document as "confidential" and the *admittedly* public pages included therewith or attached thereto as "non-confidential." In other words, some form of redaction along these lines would have indicated a *bona fide* approach to the court-ordered discovery. Flatly refusing to produce an admittedly public document simply because it is attached to a confidential document is not suggestive of a *bona fide* approach to discovery. Further, it is highly unlikely memoranda or similar documents predicated upon or relating to public information would rise beyond a "confidential" designation. Defendants make no effort to suggest otherwise.

Clearly, *every* public document designated as "Attorney's Eyes Only" constitutes a flagrant violation of the Protective Order. And defendants' designation of documents predicated upon or relating to public information as "Attorney's Eyes Only" suggests misuse of the designation.

*Paragraph 11* of the Protective Order states that "[i]n the event of ... [a] motion [seeking relief from any provision of the Protective Order], the designating party shall have the burden of persuading the Court that such 'confidential materials' constitute or contain trade secrets or other confidential research, development or commercial information so as to be entitled to protection under th[e] Protective Order." Since the "Attorney's Eyes Only" designation is a discrete category within the larger category of "confidential materials," this burden applies to it as well. *Imposition of such a burden is not uncommon*[26], and is consistent with Rule 26(c)(7) of the Federal Rules of Civil Procedure:

> [U]nder Rule 26(c)(7), the party seeking a protective order has the burden to show both (1) that the information sought to be protected is a trade secret, and (2) "good cause" in that its disclosure would work a "clearly defined and serious injury." In order to show good cause, the injury which allegedly will result from disclosure must be shown with specificity. Conclusory statements to this effect are insufficient. A protective order should not issue based only upon counsel's arguments in its briefs; the party seeking to protect itself from competitive disadvantage due to disclosure of sensitive information should support its allegations of serious injury with affidavits or depositions.[27]

According to THK, defendants have used the "Attorney's Eyes Only" designation for all documents "having virtually anything to

**24.** *"Memorandum In Opposition To Plaintiff's Motion To De–Designate Documents, To Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions,"* at 7.

**25.** *Nabisco Brands, Inc.,* 111 F.R.D., at 329.

**26.** *See, e.g., Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 111 F.R.D. 326, 328 (D.Del.1986) ("The producing party has the burden to establish the confidentiality of each contested document").

**27.** *Nabisco Brands, Inc.,* 111 F.R.D., at 330 (citations omitted).

do with an NSK customer."[28] Thus, says THK, "thousands of pages of customer solicitations, customer correspondence, customer applications and customer comments" have been designated as "Attorney's Eyes Only."[29]

Customer documents that are innocuous and far from current may not reasonably be viewed as "extremely confidential." Moreover, THK Japan and NSK Japan are not only the key competitors in the linear guide industry, they may be the sole competitors. It appears that the linear guide customer base is limited and, therefore, each company probably already knows who are the customers of the other, and may even share some customers. In any event, NSK Japan has not carried its burden in demonstrating that its "Attorney's Eyes Only" designation for customer documents is appropriate. All that defendants do is make broad, general, and conclusory assertions regarding the need to protect their customer documents, which is insufficient under the Protective Order and otherwise.[30]

THK asserts further that defendants have designated as "Attorney's Eyes Only" numerous internal documents such as confirmation letters regarding employee seminars, responses to business invitations, requests for permission to attend business trips and internal memos regarding public seminars. Such documents are not even "confidential materials" let alone "extremely confidential," and defendants have failed to demonstrate otherwise.

In the situation where parties have agreed to a two-tier protective order fashioned against the backdrop of outstanding discovery orders issued in the case and providing for two confidentiality designations—"Confidential" and "Highly Confidential"—and one of the parties is accused of and judicially found to be overdesignating documents in the higher and more restrictive of the two categories and thereby restricting the other party's ability to prepare for trial, some courts have imposed as a sanction a very short time period within which the overdesignated documents were to be reclassified.[31] Any extra costs incurred by the offending party as a result of the short deadline, such as assigning additional personnel to review and reclassify the documents over weekends and holidays are part and parcel of the sanction imposed for the intentionally wrongful designations.[32]

We find this approach too mild for defendants' egregious and contemptuous conduct and, therefore, reject it. Instead, we order defendants to de-designate all of the "Attorney's Eyes Only" documents and reclassify them "Confidential" or "Non-confidential", and to do so forthwith. For defendants there no longer is any "Attorney's Eyes Only" classification. They have lost the right to use the category. For them, the categories are "Confidential" and "Non-confidential." And all documents designated as "Confidential" are to be produced in accordance with the "Confidential" designation provisions of the *Protective Order.*

***Defendants' overdesignations are the product of bad faith.*** Courts are too overburdened with heavy caseloads and backlogs to be taxed by parties engaging in uncooperative, dilatory, and obstructionist litigation tactics, or similar stratagems designed to increase the litigation expenses of the opposing party. The risks for engaging in such conduct must be substantial in order to act as an effective deterrent.

■ Defense counsel are experienced, sophisticated, and knowledgeable patent attorneys. They know full well that trade secrets and other confidential research, development, and commercial information are commonly

---

**28.** *"Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions,"* at 8.

**29.** *Id.*

**30.** *Nabisco Brands, Inc.,* 111 F.R.D., at 330. *See also, Brittain v. Stroh Brewery Co.,* 136 F.R.D.

408, 411 (M.D.N.C.1991) (**"defendant failed to support its protective order by any factual showing"**).

**31.** *See, e.g., Quotron Systems, Inc. v. Automatic Data Processing, Inc.,* 141 F.R.D. 37 (S.D.N.Y. 1992).

**32.** *Id.*

disclosed in patent infringement actions under an appropriate protective order. In this vein, defendants successfully argued before the District Judge that THK America had control over relevant confidential documents possessed by THK Japan. Accordingly, under the October 18, 1991 Order of the District Judge, documents—confidential, extremely confidential and otherwise—in the possession of THK America as well as THK Japan were ordered produced to the defendants each of whom is a respective competitor of the plaintiff and the non-party parent. Under the October 18th Order, the trade secrets and other confidential research, development, and commercial information of non-party competitor THK Japan are disclosed to its industry competitor NSK Japan. It is not a good faith assertion for a litigant in a patent infringement action to assert that it is entitled to the relevant trade secrets and other confidential research, development, and commercial information of a non-party competitor and in the same breath refuse to disclose such relevant information in its possession.

■ *Defendants' legal opinions must be produced.* Where a potential infringer has actual notice of another's patent rights, it has an affirmative duty to exercise due care to determine whether or not it is infringing.[33] And such due care includes the duty to seek and obtain competent legal advice before engaging in activity that may result in infringement.[34] As observed by the Honorable Nicholas J. Bua, formerly of this Court:

An allegation of willfulness presupposes that the infringing party had knowledge of the plaintiff's patent rights. Generally, when a party learns of the existence of a patent, that party must obtain the advice of competent legal counsel before undertaking any actions that may constitute infringement. The failure to seek legal advice is a factor that supports a finding of willful infringement. Conversely, a party's reliance on the advice of counsel is a factor that militates against a finding of willfulness.[35]

■ Willful infringement has been alleged by THK and denied by the defendants. The determination of whether infringement has been willful turns on the state of mind of the infringers. And relevant to that issue is whether the infringers received opinions from qualified patent counsel and what those opinions said.[36] Accordingly, THK is entitled to discovery of the patent opinions that the defendants received before the lawsuit was commenced relating to the patents at issue:

Privilege or no privilege, if [NSK] intends to use such information [legal opinions] at trial, [THK] is entitled to full disclosure in order to prepare its case. [THK] has every right to obtain the information relevant to [NSK]'s defense. Of course, [NSK] cannot be compelled to waive the attorney-client privilege. If, however, [NSK] chooses to stand behind the privilege and not permit discovery, then [NSK] cannot introduce the opinions or testimony of counsel to show that it is not guilty of willful infringement.[37]

That plaintiff's assertions in support of its request for production of defendants' opinions of counsel have force and merit is evidenced by the fact that defendants offer virtually no resistance to the request. Only one page of their twenty-page brief is devoted to a response. And the response given consists of nothing more than a general and conclusory recitation of a legal maxim to which there is no dispute, but which does not rebut plaintiff's contentions. As part of their response, defendants ask that "separation of the willfulness issues [be] ordered." The request is noteworthy because separation of the willful-

**33.** *Underwater Devices Inc. v. Morrison–Knudsen Company,* 717 F.2d 1380, 1389 (Fed.Cir.1983).

**34.** *Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed.Cir.1986).

**35.** *Keyes Fibre Company v. Packaging Corporation of America,* 763 F.Supp. 374, 375 n. 1 (N.D.Ill. 1991) (citations omitted).

**36.** "Reliance on counsel has long been recognized as evidence that rebuts a claim of willful infringement." *Southwire Company v. Essex Group, Inc.,* 570 F.Supp. 643, 646 (N.D.Ill.1983) (Judge Prentice H. Marshall).

**37.** *Keyes Fibre Company v. Packaging Corporation of America,* 763 F.Supp. 374, 376 (N.D.Ill.1991) (citation omitted).

ness issue is a question that has already been decided.

On April 24, 1991, *"Defendants' Motion For Separation Of Issues And Stay Of Discovery"* was filed. The *"Memorandum In Support Of Defendants' Motion For Separation Of Issues And Stay Of Discovery"* began by stating that defendants' "Motion seeks ... bifurcation of the issues of invalidity, unenforceability and non-infringement ('the liability issues') from issues related to damages, including willful infringement ('the damages issues')." [38]

By *Order* dated August 20, 1991, the Magistrate Judge denied defendants' separation motion. In denying the defendants' motion, the Magistrate Judge observed that certain evidence in a patent infringement case was relevant to both liability and damages issues—particularly, evidence relating to the question of whether the alleged infringement was willful which touched upon both liability and damages.

By *Order* dated October 18, 1991, the District Judge affirmed this aspect of the Magistrate Judge's *Order* in its entirety:

### I. Defendants' Motion for Separation of Issues and Stay of Discovery.

The magistrate-judge found that bifurcation of the liability and damage issues in this case as well as a stay in discovery were unnecessary. The court, too, believes that a substantial overlap in the evidence for the liability and damage stages of the proceeding is likely. Accordingly, the court adopts the magistrate-judge's report and recommendation in full. Defendants' motion for bifurcation of trial issues and stay of discovery is denied. [39]

In any event, suffice it to say, that defendants offer no meritorious resistance to plaintiff's request for the production of their legal opinions. [40] Fairness dictates that the attorney-client privilege not be allowed to be manipulated to the advantage of the party asserting the privilege. [41] Accordingly, the defendants' "must either waive the attorney-client privilege and comply with [THK]'s discovery request or assure the court and opposing counsel that [they] will not pursue a defense based on the information covered by the privilege." [42]

*Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention.* [43] If the defendants obtained opinions of counsel on the issues of infringement, validity and enforceability, and decline to produce at trial any of these opinions as evidence of good faith, the trier-of-fact shall be entitled to draw the inference that the opinions are unfavorable to the defendants. [44]

*Another ground apart and separate from and independent of THK's willfulness allegations which also requires production of the defendants' legal opinions is the defendants' affirmative defenses of laches and estoppel.* By these defenses, defen-

---

**38.** "Memorandum In Support Of Defendants' Motion For Separation Of Issues And Stay Of Discovery", at 2.

**39.** *THK America, Inc. v. NSK, Ltd.*, Case No. 90 C 6049, *Order*, at 1 (N.D.Ill. October 18, 1991) (Judge Bua).

**40.** In *Cooper Industries Inc. v. Juno Lighting Inc.*, the parties conceded, perforce, that any opinions of the defendants' attorneys as to the validity of the patent at issue was relevant to prove willfulness or lack of good faith. 1 U.S.P.Q.2d 1313, 1317, 1986 WL 7060 (N.D.Ill.1986) (Judge Will). The District Judge ordered the defendants to turn over the substance of any attorneys' opinions, written or oral, that they intended to introduce at trial. *Id.*, at 1318.

**41.** *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp. 916, 918 (N.D.Ill.1989).

**42.** *Keyes*, 763 F.Supp., at 376.

**43.** *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1572 (Fed.Cir.1988). *See also, Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed.Cir.1986).

**44.** *ALM Surgical Equipment Inc. v. Kirschner Medical Corp.*, 15 U.S.P.Q.2d 1241, 1244 and 1245, 1990 WL 123996 (D.S.C.1990) ("It is ... unusual for a defendant in a patent infringement suit to obtain and refuse to produce ... legal opinions dealing with the central issues of the case").

dants contend that they relied on plaintiff's alleged delay in filing suit and inactivity to their detriment. If defendants instead relied on favorable opinions from patent counsel, detrimental reliance may be absent. In any event, discovery concerning defendants' reliance on plaintiff's alleged delay and inactivity is not limited to the alleged relied-upon actions.[45]

Objective evidence such as proof of delay, unfulfilled threats of suit and the like is merely evidence which permits a trier-of-fact to infer that the defendants actually relied on these factors.[46] However, fairness dictates that THK be permitted to rebut such an evidentiary showing: [47]

> [I]f a defense of estoppel may be defeated by showing that the party asserting the defense actually relied not on plaintiff's conduct but on its lawyers' advice, the party claiming estoppel has put attorney-client communications in issue, and fundamental fairness dictates that the plaintiff be permitted to examine communications relevant to the estoppel question.[48]

If THK can present evidence demonstrating that the defendants actually relied on something other than THK's alleged delay and inaction, such evidence would serve to undercut the inference that the defendants seek to have drawn from their objective evidence:

> In short, [NSK] asserts that it relied on [THK]'s delay [and inaction]; [THK] says that [NSK] relied on something else. What [NSK] is arguing here is that [THK] is not entitled to prove what [NSK] actually relied on, even though the court should be entitled to infer actual reliance from [NSK]'s own proof. The unfairness of [NSK]'s position is manifest.[49]

Accordingly, it is now a widely accepted principle that evidence of reliance on an opinion of counsel that a particular patent is invalid or not infringed is relevant to the question of estoppel.[50] The determination of such reliance necessarily turns upon the subjective intention of the defendants and, therefore, demands investigation into attorney-client communications where such an intention would be manifested.[51] Whether or not proof of such reliance is sufficient to overcome the defense depends upon the circumstances of the particular case at hand.[52] *In any event, defendants' raising of the estoppel defense as a dispositive issue in this case waives the attorney-client privilege and puts those opinions and the question of their actual reliance at issue.* Therefore, plaintiff is entitled to discover the pertinent attorney-client documents.[53]

Accordingly, it is adjudged, decreed, and ordered as follows:

1. Plaintiff's *"Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions"* is hereby granted.

2. For defendants' misuse of the "Attorney's Eyes Only" designation, defendants are hereby directed to de-designate all "Attorney's Eyes Only" designated documents and re-classify them as "Confidential" or "Nonconfidential" forthwith. Defendants no longer have or may use an "Attorney's Eyes Only" designation. The de-designation must be completed by the close of business on August 16th.

3. If the de-designation ordered in Paragraph 2 above is not completed by the close of business on August 16th, the defendants

**45.** *McLaughlin v. Lunde Truck Sales, Inc.,* 714 F.Supp. 916, 919 (N.D.Ill.1989).

**46.** *Southwire Company v. Essex Group, Inc.,* 570 F.Supp. 643, 649 (N.D.Ill.1983) (Judge Prentice H. Marshall).

**47.** *Southwire,* 570 F.Supp., at 649.

**48.** *Southwire Company v. Essex Group, Inc.,* 570 F.Supp. 643, 646 n. 5 (N.D.Ill.1983) (Judge Prentice H. Marshall).

**49.** *Southwire,* 570 F.Supp., at 649 (emphasis added).

**50.** *Southwire Co. v. Essex Group, Inc.,* 570 F.Supp. 643, 649 and 650 (N.D.Ill.1983).

**51.** *United States v. Exxon,* 94 F.R.D. 246, 248 (D.C.1981); and *McLaughlin,* 714 F.Supp., at 919.

**52.** *Id.*

**53.** *Southwire,* 570 F.Supp., at 650.

are hereby fined $1,000 per day for each and every day beyond August 16th that it takes to complete the de-designation.

4. In asserting their affirmative defenses of laches and estoppel, the defendants have waived their attorney-client privilege regarding the opinions of counsel on the validity and enforceability of the patents at issue and, therefore, are directed to produce such legal opinions on or before August 16th.

5. If laches and estoppel were not being asserted, we would still have before the Court plaintiff's willfulness allegations which would necessitate entry of an order requiring the defendants to elect by August 16th either to waive their attorney-client privilege and comply with THK's discovery request or submit by that date a *Statement* assuring the Court and THK that they will not pursue a defense based on the opinions of counsel regarding infringement, validity and enforceability. However, since we have found that the defendants have waived their attorney-client privilege through the assertion of their affirmative defenses of laches and estoppel, this option is not available to the defendants.

6. As the prevailing party in a Rule 37 discovery dispute, plaintiff is hereby awarded its reasonable attorneys' fees and costs necessarily incurred in connection with the filing of its *"Motion To De–Designate Documents, Modify The Protective Order, Compel Production Of Patent Opinions And Other Information And For Sanctions."*

7. Attorneys' fees and costs are assessed against the defendants on the additional ground that their abuse of the "Attorney's Eyes Only" designation was a deliberate and calculated disregard of the discovery orders of this Court.

8. Attorneys' fees and costs are assessed against the defendants on the additional ground that their discovery misconduct was a violation of Rule 16(f) of the Federal Rules of Civil Procedure. Rule 16(f) "authorize[s] sanctions on a party or his attorney for *failing to obey court orders*...."[54]

9. Attorneys' fees and costs are assessed against the defendants on the additional ground of the inherent power of the Court to regulate the litigation before it and to enforce compliance with its orders.

10. Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the parties are given 10 days after being served with a copy of the Order to file exceptions thereto with The Honorable Charles R. Norgle, Sr. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Order.[55]

So Ordered.

Dated: August 6, 1993.

---

**54.** *Coleman v. Ballentine,* 101 F.R.D. 541, 542 (N.D.Ill.1984) (Judge Shadur) (emphasis added). Rule 16(f) "really reaffirms a court's always-recognized inherent power to regulate litigation and *'expressly provides for imposing sanctions against disobedient or recalcitrant parties or their attorneys, or both.'"* *Id.,* at 542 and 543 (emphasis added).

**55.** *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See also, Provident Bank v. Manor Steel Corporation,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's Order).