COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 26, 2026
Date Decided: March 1, 2026

Tyler J. Leavengood, Esquire
Jaclyn C. Levy, Esquire
Charles P. Wood, Esquire
Megan R. Thomas, Esquire
Joshua S. Almond, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Timothy Jay Houseal, Esquire
Colin A. Keith, Esquire
Young Conaway Stargatt
& Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

Jason J. Rawnsley, Esquire
Gabriela Z. Monasterio, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

RE:    *ECO Cap., Inc. v. Nivel Parts & Mfg. Co., LLC et al.*,
       C.A. No. 2026-0173-PAF

Dear Counsel:

This letter decision resolves plaintiff ECO Capital, Inc.'s ("ECO") motion challenging defendant Jeffery Allen, Inc.'s ("JAI") designation of "Highly Confidential" discovery material (the "Motion").[1]  The court grants the Motion.  As

---

[1] Dkt. 74.

a result, all documents that JAI has designated as Highly Confidential shall lose that designation and are deemed Confidential under the terms of the confidentiality order governing this case.

## I.      FACTUAL BACKGROUND

This is a dispute over the sale and distribution of lithium golf cart batteries. In 2023, defendant Nivel Parts & Manufacturing Co., LLC ("Nivel") became the exclusive wholesale distributor of ECO batteries. That arrangement is documented in a "Distribution Agreement," under which Nivel agreed to "not distribute or sell another lithium battery primarily intended for use in" golf carts and other personal transportation vehicles.[2] Prior to its specified expiration date, the Distribution Agreement allows either party to terminate the agreement without cause or for cause.[3] A termination without cause would become effective 180 days following the delivery of a notice of termination.[4] A termination for cause could be invoked in the event of breach and a failure to cure within a specified period. A termination for cause, which is available to a non-breaching party, is effective immediately.[5]

---

[2] Dkt. 81 ("Am. Compl.") Ex. 1 ("Distribution Agreement") § 2.2.

[3] *Id.* § 9.2.

[4] *Id.* § 9.2(a).

[5] *Id.* § 9.2(b)(ii).

On September 24, 2025, Nivel notified ECO that it was terminating the Distribution Agreement without cause. The termination notice acknowledged that Nivel would continue to perform for another 180 days, through March 24, 2026.[6] Unbeknownst to ECO at that time, Nivel had been negotiating to acquire ECO's competitor, Bolt Energy USA, LLC ("Bolt"), which sold batteries under the Bolt label. On November 12, 2025, Nivel publicly announced that it had acquired Bolt and that it would be selling Bolt batteries.

## A.     The Prior Litigation

On November 20, 2025, ECO filed suit in this court alleging Nivel breached the Distribution Agreement and requesting an injunction to prevent Nivel from selling Bolt batteries during the 180-day tail period.[7] Later that evening, Nivel purported to terminate the Distribution Agreement for cause, which Nivel claimed was effective immediately, and relieved it from complying with the 180-day tail period.[8]

After briefing and argument, the court granted ECO's motion for a temporary restraining order preventing Nivel from selling Bolt batteries. The court entered the

---

[6] Am. Compl. ¶ 27.

[7] *See* C.A. No. 2025-1356 (the "First Action") Dkt. 1.

[8] Am. Compl. ¶ 18.

TRO on December 3, 2025, at 4:52 p.m.[9] The TRO was conditioned on ECO posting a $100,000 bond.[10] ECO deposited the bond amount with the court the next morning and filed a letter on the docket at 12:36 p.m. confirming that the bond requirement had been satisfied.[11] The parties then engaged in further expedited discovery and briefing on ECO's motion for a preliminary injunction. At the start of the December 12 hearing on that motion, the court informed the parties that it was scheduling a trial for December 29–30, 2025. On December 16, 2025, the court granted ECO's motion for a preliminary injunction, having concluded that "absent an injunction, the Defendant's ability to sell Bolt batteries, which directly compete with ECO batteries, will continue to cause harm" to ECO.[12]

## B.    The Settlement

On December 21, 2025, Nivel and ECO advised the court that they had reached an agreement in principle to settle the litigation, and one day later, the court granted the parties' stipulated order to vacate the trial schedule.[13] ECO and Nivel executed their settlement agreement on New Year's Eve ("Settlement Agreement").

---

[9] First Action Dkt. 22; Am. Compl. ¶ 21.

[10] First Action Dkt. 22; *see* Am. Compl. ¶ 21.

[11] First Action Dkt. 24; *see* Am. Compl. ¶ 21.

[12] First Action Dkt. 112 at 45:18–23.

[13] First Action Dkt. 102.

It required ECO and Nivel to "continue to abide by the Distribution Agreement," and specified that:

> Nivel and anyone acting on Nivel's behalf, including its subsidiaries and affiliates, shall not distribute or sell any lithium batteries that were not manufactured by ECO and which are primarily intended for use in golf cars, personal transportation vehicles, and low-speed vehicles . . . through March 24, 2026, as contemplated by Section 2.2 of the Distribution Agreement.[14]

Nivel also agreed to pay ECO's attorney's fees in the litigation.[15] The Settlement Agreement contained mutual releases and an anti-reliance provision stating that:

> THE PARTIES ACKNOWLEDGE THE CONTESTED AND ADVERSARIAL NATURE OF THE DISPUTE AND STIPULATE THAT IN EXECUTING THIS SETTLEMENT AGREEMENT THEY ARE NOT RELYING ON ANY REPRESENTATION BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS WITH REGARD TO (1) FACTS UNDERLYING THE DISPUTE; (2) THE SUBJECT MATTER OR EFFECT OF THIS SETTLEMENT AGREEMENT, AND (3) ANY OTHER FACTS OR ISSUES WHICH MIGHT BE DEEMED MATERIAL TO THE DECISION TO ENTER INTO THIS SETTLEMENT AGREEMENT.[16]

In accordance with the Settlement Agreement, ECO and Nivel filed a stipulated order dissolving the preliminary injunction and dismissing each party's

---

[14] Am. Compl. Ex. 2 ("Settlement Agreement") § 1.1(b).

[15] *Id.* § 1.3.

[16] *Id.* § 7.3.

claims with prejudice.[17]   The court entered the stipulated judgment on January 6, 2026.[18]

### C.    The New Action

On February 12, 2026, ECO filed the present action, based upon information that it learned after executing the Settlement Agreement.  ECO claims that the Settlement Agreement was the product of fraud and that Nivel has breached both the Settlement Agreement and the Distribution Agreement.  ECO also asserts that JAI, a retail and wholesale distributor of Bolt batteries, conspired with Nivel to commit fraud.  Specifically, ECO alleges that in the lead up to Nivel's acquisition of Bolt, during the litigation leading up to the Settlement Agreement, as well as after the Settlement Agreement became effective, Nivel and JAI coordinated to sell Bolt batteries.[19]

On February 13, 2026, the court granted ECO's motion for expedited proceedings and entered a temporary restraining order, preventing Nivel from directly or indirectly selling or distributing Bolt batteries.  At that time, the court concluded that ECO had stated colorable claims for breach of contract but had not

---

[17] *Id.* § 3.

[18] First Action Dkt. 115.

[19] Am. Compl. ¶¶ 27–29.

stated a colorable claim for fraudulent inducement or conspiracy to commit fraud.[20]

The court granted ECO's motion to expedite and scheduled a preliminary injunction hearing for February 24.[21]  Days later, Nivel and ECO agreed to a stipulated preliminary injunction through March 24.[22]  They disagreed, however, as to whether an expedited trial was warranted.

JAI, a Florida entity, claims it is not subject to jurisdiction in Delaware and has moved to dismiss.  In granting ECO's first motion to expedite, the court permitted ECO to engage in limited discovery in aid of establishing jurisdiction over JAI.  The court observed that JAI probably possessed information relevant to ECO's breach of contract claims against Nivel and encouraged JAI to be cooperative in facilitating discovery.  The court also noted that ECO might seek to obtain discovery from JAI through a subpoena.

On February 20, 2026, ECO filed an amended complaint, which added factual allegations to support its original claims and asserted a new claim against JAI for tortiously interfering with the Settlement Agreement and the Distribution

---

[20] The court reached this conclusion based on an anti-reliance clause in the Settlement Agreement.  Dkt. 118 24:6–25:3.

[21] Dkt. 106 42:6–8.

[22] Dkts. 71, 79.

Agreement. On February 23, the court granted ECO's motion for expedited proceedings and scheduled a two-day trial for March 10-11, 2026, on all claims, including those asserted against JAI for conspiracy to commit fraud and for tortious interference with contract, both of which the court found to be colorable.[23]

In the flurry of motion practice, the parties submitted competing forms of a confidentiality order to govern discovery.[24] The court rejected the parties' proposed orders and, instead, entered a confidentiality order that largely tracks the standard form of two-tiered confidentiality order that is posted on the court's website.[25] Under the Confidentiality Order, a document may be designated as Confidential if it contains:

> nonpublic, confidential, personal, business, strategic, proprietary, or commercially sensitive information that requires the protections provided in [the Confidentiality] Order and that has not become part of the public record.[26]

A document may be designated as Highly Confidential if it contains:

> Confidential Discovery Material that, if disclosed other than as permitted pursuant to paragraph 8 of this [Confidentiality] Order, the

---

[23] *See* Dkt. 96, 117. The trial is limited to questions of liability and ECO's request for equitable relief in the form of extending the term of the Distribution Agreement. The damages phase, if necessary, will occur at a later date. Dkt. 117 14:12–21.

[24] Dkts. 40, 41.

[25] Dkt. 47 ("Confidentiality Order").

[26] *Id.* ¶ 1(b).

Producing Person in good faith and reasonably believes is substantially likely to cause injury to the Producing Person.[27]

Confidential and Highly Confidential Discovery Material may only be transmitted and viewed by certain people in connection with litigation. The critical difference between the two is, generally, that Highly Confidential Discovery Material may not be transmitted to or reviewed by the parties and their officers, directors, and employees, even if they are assisting with the litigation.[28]

### D. The Current Discovery Dispute

On February 20, ECO filed the Motion challenging JAI's designation of documents as Highly Confidential. ECO asserted that JAI had designated approximately 78% of the 2,769 documents produced as of that date as Highly Confidential.[29] JAI broadly defended its designations, maintaining that the documents designated as Highly Confidential included "personally identifiable information for former, current, and prospective customers, customer pricing information, JAI pricing information, internal forecasts, pricing models, strategic plans, inventory projections, manufacturers and/or manufacturers contact

---

[27] *Id.* ¶ 1(e).

[28] *Id.* ¶¶ 7–8.

[29] Motion at 1.

information and pricing, and internal business correspondences" all of which "is highly competitively sensitive" information for which "disclosure to . . .ECO[]—a direct competitor in the golf car industry—is substantially likely to cause injury to JAI."[30] JAI further asserted that "[t]he very nature of ECO's discovery requests calls for production of highly confidential information" so the percentage of designation should "come as no surprise to ECO."[31]

Before ECO filed the Motion, JAI "proposed a compromise" requiring ECO to identify JAI documents that ECO believed were not Highly Confidential, after which JAI would consider re-reviewing those designations.[32] ECO rejected that proposal as being inconsistent with the Court of Chancery Rules and the Confidentiality Order.[33] Instead, ECO pressed for an order declaring that all JAI documents designated as Highly Confidential be redesignated as Confidential.

Given the highly expedited nature of this matter, the court took a cautious approach to resolving the discovery dispute. On Monday, February 23, the court granted the Motion with modifications (the "Order"), and implemented a detailed,

---

[30] Dkt. 83 ¶ 1.

[31] *Id.* ¶ 2.

[32] *Id.* ¶ 6.

[33] *See e.g.* Dkt. 74 ¶¶ 19–20; *see also* Dkt. 84 ¶¶ 5, 17.

albeit expedited, process aimed at resolving the dispute or, at a minimum, narrowing the issues.[34]   The Order directed JAI to re-review its designation of Highly Confidential documents and to provide a new designation list to ECO, which ECO could then challenge.[35]  The Order required the parties to meet and confer over any unresolved issues and directed that Delaware counsel be "present and personally involved in the meet and confer session."[36]  If the parties could not resolve their dispute, the Order directed them to submit a joint letter with a list of disputed designations by Thursday, February 26.[37]  To ensure integrity in the process, the court borrowed a tool that has been used in disputes over the withholding of documents based upon assertions of attorney-client privilege and the work product doctrine.[38]  Specifically, the court directed the parties as follows:

---

[34] Dkt. 89 (the "Order").

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *See ATP III GP, Ltd. v. Rigmora Biotech Inv'r One LP*, 2025 WL 2601240 (Del. Ch. Sept. 8, 2025) (providing a procedure for cross-checking privilege logs which allowed plaintiff a 30% error rate in claiming privilege on a sample set documents submitted for in camera review, and, ultimately, holding that all documents subject to the motion were deemed to waive privilege when the special discovery magistrate concluded that plaintiff had no basis to assert privilege for 60% of the selected documents); *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, 2004 WL 2323135, at *3 (D. Del. Oct. 7, 2004) (ordering production of all documents on plaintiff's privilege log after *in camera* review of a sample set of documents submitted by defendant and finding that those documents were not privileged);

ECO may identify and submit for *in camera* inspection a sample of six documents that remain the subject of dispute. If the court determines that any document in the sample does not qualify for Highly Confidential treatment, then the court may order the de-designation of all documents that are contained in the list attached to the parties' joint letter submission.[39]

On February 26, 2026, ECO and JAI filed a joint letter framing the outstanding areas of disagreement (the "Joint Letter").[40] According to the Joint Letter, JAI redesignated 36 documents from Highly Confidential to Confidential and determined that 3 other documents previously designated as Highly Confidential were neither Highly Confidential nor Confidential.[41] In sum, JAI continues to maintain that 2,130 of the 2,769 documents it has produced in this litigation (77%)

---

*Thermo Fisher Sci. PSG Corp. v. Arranta Bio MA, LLC*, 2023 WL 300150, at \*9 (Del. Ch. Jan. 18, 2023) (stating, after reviewing a sample of documents submitted for *in camera* review, "[t]he problems with [p]laintiff's log are so pervasive that I could—and arguably should—grant [d]efendant's request for relief [to produce all privileged documents to defendant without redactions] as to the entirety of [p]laintiff's log."); *see also Storagecraft Tech. v. Persistent Telecom Sols., Inc.*, 2016 WL 5852464, \*2 (D. Utah Oct. 6, 2016) (ordering defendant to re-review its entire production of highly confidential designated documents and, if plaintiff continues to believe defendant is significantly over designating, plaintiff must submit for *in camera* review a sample set of documents and the court will impose appropriate sanctions if defendant continues to over designate documents, which may include "stripping the [highly confidential] designation from all of [d]efendant's documents"), *objections overruled*, 2016 WL 6988819 (D. Utah Nov. 29, 2016).

[39] Order.

[40] Dkt. 103 ("Joint Letter").

[41] *Id.* at 2.

warrant Highly Confidential treatment.[42]  ECO disputes the Highly Confidential designation of all of those documents.[43]  ECO declined JAI's proposed compromises and submitted six disputed documents for *in camera* review.[44]

## II.    ANALYSIS

"Confidentiality orders must . . . ensure that only truly confidential information is being withheld from public disclosure and that the parties are not using the protective order as a device to shield nonconfidential information from the public" in an effort to "sanitize the public record" or shield "potentially embarrassing or unflattering" information.  2 Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate and Commercial Practice in the Delaware Court of Chancery § 6.02 (2d ed. 2021) (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *In re Walt Disney Co. Deriv. Litig.*, 2004 WL 368938, at *1 (Del. Ch. Feb. 24, 2004)).  When JAI designated documents as Highly Confidential, it was required to have "a good faith basis for the designation."[45]  Under the Confidentiality Order,

---

[42] Beyond that, JAI told ECO that it might "consider, on an expedited basis, re-designating documents ECO [] identifie[s] as necessary, redact highly confidential information from document[s] ECO considers necessary, and . . . allow a designated ECO employee to review Highly Confidential material under the" Confidentiality Order). Joint Letter at 5–6.

[43] *Id.* at 5; *see id.* Ex. 1.

[44] *See* Dkt. 104.

[45] Confidentiality Order ¶ 6.

JAI, as the producing party, "bears the burden of establishing that the [challenged documents] qualif[y] as . . . Highly Confidential Discovery Material."[46] *See Brandrep, LLC v. Ruskey*, 2018 WL 6820964, at *1 (Del. Ch. Dec. 27, 2018) ("Where designations of confidentiality have been made pursuant to a protective order, the burden is on the designating party to show good cause why its designations should be sustained if the non-designating party objects."). "A trial court retains the jurisdiction and authority to enforce, modify, or terminate any confidentiality order it has entered. . . as long as that order remains in effect." *Hallett v. Carnet Hldg. Corp.*, 809 A.2d 1159, 1162 (Del. 2002).

The court has carefully reviewed the six documents selected by ECO for *in camera* review. JAI continues to maintain that these documents, along with the other 2,130 documents designated as Highly Confidential, warrant that treatment following three reviews. The first review occurred prior to JAI's initial production. The second was in response to the court's February 23 Order, which directed JAI to conduct another review of its designations in response to the Motion. The third was when JAI and ECO met and conferred before filing the joint letter on February 26, which was also a requirement of the Order. That process resulted in JAI's de-

---

[46] *Id.* ¶ 15.

designating or downgrading only 2% of the documents that it had originally designated as Highly Confidential. That, alone, gives rise to suspicion. *See Thermo Fisher*, 2023 WL 300150 at *4 ("Having many log entries that do not identify an attorney is a red flag indicative of larger problems. That turned out to be very true here."); *see also Procaps S.A. v. Patheon Inc.*, 2015 WL 4430955, at *9 (S.D. Fla. July 20, 2015) ("Procaps' attorneys presumably performed the *final* review [of the documents], and one or more of its attorneys realized, or should have realized, that a 95% highly confidential, [] designation rate is problematic and questionable (or 'absurd') on its face.").

What follows is the court's analysis of the six documents submitted for *in camera* review.

### A.    JAI-0003594

The first document is a single, two-line text message from Art Porter of JAI to a person only identified as "Chuck" of Victory Golf Carts.[47]   The text message was sent at 1:51 p.m. on January 22, 2026, and reflects a potential sales lead that Nivel's Chief Executive Officer, Donnie Jouppi passed along to Porter. The text

---

[47] Bates Number JAI-0003594.

message reveals Porter's phone number, and the cover page to the production reveals

Chuck's phone number.



**Messages in chronological order** (times are shown in GMT -05:00)

b4fa2f98b8ac8d4b6b2235e878271926

AP  Art Porter (+12393003970)  ▶ 1/22/2026, 1:51 PM
Chuck good afternoon. My name is Art Porter with Bolt Energy. Donnie Jouppi gave me your number and said that you were interested in Bolt. How can I help? Im at the PGA Show today if you are here.

There is nothing Highly Confidential about this text message; JAI could not reasonably conclude that its disclosure would be substantially likely to cause injury to JAI. Nor are the phone numbers Highly Confidential. Porter's phone number in the text message is the same as that displayed on JAI's website. Additionally, "Chuck's" phone number is also easily found through an internet search. This document is neither Highly Confidential nor Confidential.

### B.    JAI-0004340 to JAI-0004341

The second document is an internal JAI email exchange between Ben Sverdlow and Josh Berman.[48] On January 29, 2026, at 10:14 p.m., Sverdlow emailed Berman regarding "Questions and documents I need" and asked Berman to "[g]ive

---

[48] Bates Numbers JAI-0004340 to JAI-0004341.

me a call on this before you begin to work on this. I know it's a lot of docs but I really need them as soon as possible." The documents Sverdlow requested in the email include "PO's 136, 148, 149, [and] 150 with Nivel" and the verification of cancellation, copies of every purchase order with the China-based manufacturer of Bolt batteries, verification of wires sent to the manufacturer, and the purchase order reflecting the "scramble[] of December 3 to buy a bunch of batteries from Nivel before the injunction was finalized with the required bond." Berman responded the next day with the requested information. The attachments to Berman's email were not submitted for *in camera review*. This email exchange is not Highly Confidential. The emails contain no specifics about the purchase orders or payments to the manufacturer. The mere fact that JAI cancelled purchase orders and issued other purchase orders is not substantially likely to cause injury to JAI if that information is produced to ECO.

### C.    JAI-0003447

The third document is a partial screenshot of an email from Ken Brasington of Edgewater Custom Carts to someone only identified as "Jenn."[49] The screenshot obscures the date, subject line, and email addresses of the sender and recipients. In

---

[49] Bates Number JAI-0003447.

the substance of the email, Brasington asks for help in ordering golf cart batteries because he had been told that he could not place them through Nivel and needed to call Bolt. The screenshot also contains the email address and phone number for Edgewater Custom Carts.

The screenshot of this email is not highly confidential nor is the email itself if it were produced in native form. The phone number in the email is also not confidential because it is the official phone number for Edgewater Custom Carts. There is nothing in the third document that merits a Highly Confidential designation.

### D.    JAI-0004222

The fourth document[50] is a three-sentence email from Brady Horton of Nivel to Sverdlow of JAI, dated January 6, 2026. The subject of the email is Nivel's open purchase orders with a battery manufacturer in China. The email attaches an excel spreadsheet purportedly summarizing purchase orders with the manufacturer, but only the email was submitted for *in camera* inspection. The email generally states only that Nivel's recent March/April purchase orders had been removed from the spreadsheet. The email does not provide any detail about the purchase orders in question.

---

[50] Bates Number JAI-0004222.

Nivel has insisted throughout this litigation that Nivel and JAI are not affiliates and that Nivel has no ownership interest in JAI.[51] If so, then how is the email about Nivel's purchase orders with its manufacturer in China Highly Confidential, when Nivel chose to share it with JAI? The court fails to see how production of a short transmittal email merely stating that Nivel had canceled an unspecified number of purchase orders with another entity in January 2026 would be substantially likely to cause injury to JAI if disclosed to ECO employees who are deemed, by ECO's trial counsel, to be reasonably necessary to assist with the prosecution of the case.[52]

### E.    JAI-0003575

The fifth document is an exchange of eight text messages between Art Porter of JAI and "PB Carts Ormond Beach" on December 3, 2025.[53] The participants are discussing Porter's recent job interview. Porter indicates that he was at Nivel the day before, and when the individual at PB Carts Ormond Beach asked "How did it

---

[51] *See e.g.* Dkt. 6 at 1 (Nivel stating JAI is an "unaffiliated market participant" and JAI's conduct as "third-party conduct"); *id.* at 7 ("But after Nivel dispelled ECO's assumption that JAI was an affiliate or subsidiary of Nivel. . ."); Dkt. 106 24:7–9 (Nivel stated at the first TRO hearing, "JAI is not owned by Nivel. Nivel gets no benefit, generates no revenue from JAI's selling batteries."); *id.* at 29:9–10 (Nivel stating "JAI's not an affiliate of Nivel under Delaware law").

[52] *See* Confidentiality Order ¶ 7(a).

[53] Bates Number JAI-0003576.

go?" Porter responded: "I took the job. Start Feb 1." Porter's text message exchange with a third party about his accepting a new job effective February 1—presumably with Nivel—is not Highly Confidential JAI information. Its disclosure is not substantially likely to cause injury to JAI—indeed it was already disclosed to PB Carts Ormand Beach. Finally, the telephone numbers in the text exchange are publicly available and easily found through a brief internet search.

### F.   JAI-0002461

The sixth and final document submitted for *in camera* review is a short November 26, 2025, email from Jesse Burson of Nivel to Art Porter of JAI.[54] The email is transmitting the terms of a potential job offer to Porter, which appears related to the fifth document discussed above. The email contains two pdf attachments, neither of which was submitted for *in camera* review. The substance of the email in its entirety is as follows:

---

[54] Bates Number JAI-0002461.

Hi Art,

Please find the role description and compensation structure enclosed.

There are a few specific items that I am sure you want to walk through (how overdrive is calculated), which we can discuss during our meeting shortly.

Looking forward to speaking with you.

It strains credulity to even suggest that an email from Nivel to Porter transmitting the terms of potential employment is Highly Confidential information of JAI, the producing party.

\* \* \* \*

It is natural in highly expedited litigation for parties to act cautiously and to be protective of internal corporate information, particularly when competitors are parties to the case. But a review of the six documents submitted for *in camera* inspection shows that JAI chose an overly aggressive approach that it cannot justify in this case, even considering the highly expedited nature of the dispute. JAI did not help its cause when it first designated approximately 78% percent of its production as Highly Confidential. This suggests that JAI chose the Highly Confidential designation as the default, rather than reviewing documents with a critical eye and making a good faith determination that the designation was warranted. JAI only made matters worse when, after two more opportunities to review its earlier designations, selected a tiny fraction to downgrade from Highly Confidential to

Confidential. Finally, JAI did not improve its position with its proposed "compromise," that effectively sought to shift the burden to ECO to demonstrate which of JAI's documents should not be designated Highly Confidential. It was not ECO's obligation to pick through and identify from among the more than two-thousand documents designated as Highly Confidential those that JAI would "consider" reviewing after already having done so three previous times. It is and was JAI's responsibility to exercise good faith when designating documents as Highly Confidential, and JAI bears the burden of establishing that the documents it designated as Highly Confidential continue to qualify for that treatment.

JAI has designated discovery material as Highly Confidential that is not worthy of Highly Confidential Treatment under the Confidentiality Order. None of the six documents submitted for *in camera* inspection contains Highly Confidential information, and the court has serious doubt as to any good faith basis to designate three of them as even worthy of Confidential treatment.

"The Court also 'has broad discretion in determining the scope of discovery.'" *Handler v. Centerview P'rs Hldgs. L.P.*, 2023 WL 1955151, at * 2 (Del. Ch. Feb. 13, 2023) (quoting *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1212 (Del. Ch. 2022)). And has broad discretion to fashion appropriate remedies for violations of a court order governing discovery. *Marshall Fam. Props., LLC v. Fusco*, 2026 WL 221459, at *8

(Del. Ch. Jan. 28, 2026). The appropriate remedy for JAI's failure to comply with the terms of the Confidentiality Order is to re-designate all documents listed on Exhibit 1 to the Joint Letter from Highly Confidential to Confidential. *See Klig v. Deloitte LLP*, C.A. No. 4993-VCL (Del. Ch. Aug. 6, 2010) (TRANSCRIPT) (de-designating all documents on a party's privilege log due to gross over designation), *interlocutory appeal denied*, C.A. No. 569, 2010 (Del. Sept. 27, 2010) (ORDER); *Pfizer*, 2004 WL 2323135 at *3 (ordering production of all documents on plaintiff's privilege log after *in camera* review of a sample set of documents submitted by defendant and finding that those documents were not privileged); *Thermo Fisher*, 2023 WL 300150 at *9 (stating after *in camera* review of a sample set of documents, "[t]he problems with [p]laintiff's log are so pervasive that I could—and arguably should—grant [d]efendant's request for relief [to produce all privileged documents to defendant without redactions] as to the entirety of [p]laintiff's log."); *THK Am., Inc. v. NSK Co. Ltd.*, 157 F.R.D. 637, 647 (N.D. Ill. 1993) (ordering "defendants to de-designate all of the 'Attorney's Eyes Only' documents and reclassify them 'Confidential' or 'Non-confidential', and to do so forthwith. For defendants there no longer is any 'Attorney's Eyes Only' classification. They have lost the right to use the category. For them, the categories are 'Confidential' and 'Non-confidential.'"). The court is keenly aware of the highly expedited nature of this case and, therefore,

is not imposing the more severe remedy of declaring that none of the challenged documents even qualifies for Confidential treatment.

### G. Attorneys' Fees and Expenses

ECO is entitled to recover its attorneys' fees and expenses in litigating the Motion. "Discovery abuse has no place in [Delaware] courts." *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984) (quoting Delaware Superior Court Civil Rule 1). "Trial courts should be diligent in the imposition of sanctions upon a party who refuses to comply with discovery orders, not just to penalize those whose conduct warrants such sanctions, but to deter those who may be tempted to abuse the legal system by their irresponsible conduct." *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717 (Del. 2008).

Rule 37(b)(4)(A) provides that on a motion to require compliance with a discovery order, the court "shall require the party . . . or attorney advising such conduct or both of them to pay to the moving party" reasonable fees and expenses, including attorneys' fees. The Delaware Supreme Court has explained that under Rule 37, "when a party fails to comply with discovery orders of the Court or otherwise engages in discovery abuses, the award of attorneys' fees and expenses to the opposing party is *mandatory*, absent a showing by the wrongdoer that his actions

were substantially justified or that other circumstances make the award unjust."

*Bader v. Fischer*, 504 A.2d 1091, 1096 (Del. 1986) (emphasis added).

JAI has made no showing that its improper designation of documents as Highly Confidential and failure to correct its violation of the Confidentiality Order was substantially justified. Nor are there any other circumstances to make the award of fees unjust.

ECO is awarded and JAI shall be responsible for the expenses ECO has incurred including attorneys' fees for bringing the Motion and any actions required by the Order. If the parties are unable to reach agreement on the amount of fees and expenses to be paid, then ECO shall file a Rule 88 affidavit outlining the attorneys' fees and costs it incurred in bringing the Motion and complying with the Order. The parties shall then submit a stipulated scheduling order to resolve the fee and expense award.

## III. CONCLUSION

For the foregoing reasons, each document designated as Highly Confidential on Exhibit 1 of the Joint Letter is downgraded from Highly Confidential to Confidential. ECO is awarded and JAI is ordered to pay the expenses ECO has incurred, including attorneys' fees, for bringing the Motion and any actions required by the court's Order.

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor